IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-41439
_____

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 9, 2005**

**Charles R. Fulbruge III**
Clerk

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

                    versus

VERONICA SOLIS-GARCIA,

                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi

_____

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Veronica Solis-Garcia pleaded guilty to one count of transporting an illegal alien and was sentenced to twenty-four months in prison. The question presented in this appeal is whether the district court, in sentencing Solis, erred in applying the enhancement for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" for Solis's transportation of seven illegal aliens in a minivan, four of whom were lying side by side in the cargo area of the minivan. UNITED STATES SENTENCING GUIDELINES MANUAL § 2L1.1(b)(5)(2004)(hereinafter USSG).

We hold that, without further aggravating factors, Solis's conduct in transporting seven aliens, only four of whom were lying down in the cargo area of the minivan, does not constitute "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." Accordingly, Solis's sentence is VACATED, and we REMAND for re-sentencing in accordance with this opinion.

I

A

The following facts are uncontested. On May 6, 2004, United States Border Patrol agents near the Falfurrias checkpoint in Texas saw a 1996 Dodge Caravan minivan drive past their location. Because the van appeared to be heavily loaded, they followed it. When the agents pulled alongside the van, they recognized the occupant of the front passenger seat as an individual they had recently apprehended as being illegally in the United States. Solis was the driver of the minivan.

The agents pulled over the minivan, and discovered seven illegal aliens inside (including the individual in the front passenger seat). The rear seat of the minivan had been removed, and four aliens were lying side by side in the cargo area of the van. The other three aliens were seated in the bucket seats of the minivan, one in the front passenger seat and two in the middle row of seats. They were bound for Houston.

2

Solis was charged on May 26, 2004 with two counts of transporting an illegal alien within the United States, and with aiding and abetting. Without a written agreement, Solis pleaded guilty to one of those two counts.

In the Presentence Report ("PSR"), the Probation Officer made the following sentencing recommendations: The base offense level was 12, USSG § 2L1.1(a)(2); three points were to be added because Solis transported seven illegal aliens, USSG § 2L.1(b)(2)(A); two points were to be added because Solis obstructed justice by making false statements to the court regarding relevant conduct, USSG § 3C1.1; and three points were to be added because Solis "intentionally or recklessly created a substantial risk of death or serious bodily injury to another person by transporting unsecured illegal aliens in the cargo area of the vehicle she was operating," USSG § 2L1.1(b)(5). The PSR recommended that Solis was also entitled to a three-point reduction for acceptance of responsibility, USSG § 3E1.1. The final recommendation of the PSR was a total offense level of 17. With Solis's Category I criminal history, the recommendation resulted in a guideline imprisonment range of twenty-four to thirty months.

Solis objected, inter alia, to the three-point increase under § 2L1.1(b)(5) for "creating a substantial risk of death or serious bodily injury," arguing that the third row seat of the minivan had been removed and "the illegal aliens were lying comfortably on the

floor of the vehicle." The Probation Officer asserted that the increase was applicable, emphasizing that "[i]nstead of having the third row seat in place and having adequate seating and safety restraints for all seven of the smuggled aliens, [Solis] elected to place the aliens in jeopardy by having them lay [sic] on the floor of the vehicle side by side in a crowded and unsecured position while traveling at highway speeds."

The district court overruled Solis's objection at sentencing, stating:

> [T]he Fifth Circuit has said that the back of a pickup truck is dangerous; yet, they can get out and they have fresh air. It's just dangerous to transport people like that. . . .
>
> ***
>
> So if the back of a pickup truck is dangerous, I think the back of a minivan where people can be thrown around and seriously endangered just in a sudden stop . . . . That's why [there are] seats and all seats have seatbelts in those cars and these people were not given that opportunity. And the only way they could be transported was lying like cord wood in the back of a minivan and that's dangerous. . . .

The district court sentenced Solis to 24 months in prison and to three years of supervised release.

Solis filed a timely notice of appeal.

We continue to apply the same standard of review to a sentence imposed under the Sentencing Guidelines that we applied prior to the Supreme Court's ruling in United States v. Booker, 125 S. Ct. 738 (2005): We review a district court's interpretation of the guidelines de novo and its factual determinations for clear error. United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005) (interpretation of the guidelines is reviewed de novo); United States v. Villaneueva, 408 F.3d 193, 203 n.9 (5th Cir. 2005) (factual determinations are reviewed for clear error).

The facts of Solis's offense are undisputed, and the question before us is a strictly legal one to be reviewed de novo: Whether Solis's conduct in transporting the illegal aliens qualifies as "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" as required for a § 2L1.1(b)(5) sentence enhancement.

Under § 2L1.1(b)(5), an individual's sentence for the offense of smuggling, transporting, or harboring an unlawful alien is enhanced if the offense has the following "Special Offense Characteristic":

> If the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels, but if the resulting offense level is less than 18, increase to level 18.

The commentary to this provision further explains

> Reckless conduct to which the adjustment from subsection (b)(5) applies to a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition). . . .

USSG § 2L1.1, comment (n.6).[1] Clearly, the conduct to which the enhancement applies is not limited only to the particular conduct described in the commentary's examples, but all of these examples encompass "situations that, for one reason or another, pose inherently dangerous risks to the aliens being transported." United States v. Garcia-Guerro, 313 F.3d 892, 896 (5th Cir. 2002). We must determine whether Solis's transportation of four aliens lying side by side in the cargo area of her minivan constitutes such an inherently dangerous risk to the aliens being transported. We have never before addressed the applicability of § 2L1.1(b)(5) to facts such as these.

B

Solis argues that her conduct did not create a substantial risk of injury or bodily harm to the aliens being transported lying on the floor of the van. The sole support cited by Solis for her

---

[1] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

6

position is the Ninth Circuit's decision in United States v. Dixon, in which the court distinguished between aliens being transported in the hatchback of a vehicle and aliens being transported in the trunk of a vehicle.  201 F.3d 1223, 1233 (9th Cir. 2000) (holding that the district court clearly erred in adopting the PSR's findings that the aliens were transported in a trunk when they were, in fact, transported in the hatchback area of a vehicle). The Ninth Circuit noted that

> Unlike a trunk, except for the lack of seatbelts, the dangers of riding in the hatchback area of a car are not obvious.  For example, a person hiding inside a locked trunk could not extricate himself, while a person hiding in a hatchback area easily could extricate himself by pushing up the lightweight, flimsy hatchback cover.

Id.  We understand Solis to argue that riding lying down in the cargo area of a minivan is far more akin to riding in the hatchback area of a vehicle than the trunk and, as such, the district court erred in finding that the aliens in the minivan were exposed to an inherently dangerous situation.

The Government disagrees.  The Government points to our decision in United States v. Cuyler, in which we held that the transportation of four illegal aliens in the bed of a pickup truck on the highway involved a substantial risk of death or serious bodily injury.  298 F.3d 387 (5th Cir. 2002).  We described the risk associated with the transportation of aliens in a pickup truck bed as that "aliens who are unrestrained easily can be thrown from

7

the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving." Id. at 391. The Government argues, in essence, that the risks of injury to the unrestrained aliens lying prone in the cargo area of a minivan are akin to the risks of unrestrained aliens in the bed of a pickup truck. The Government also points to cases in the Ninth and Tenth Circuits in support of the application of § 2L1.1(b)(5) in similar circumstances. United States v. Hernandez-Guardado, 228 F.3d 1017, 1027-28 (9th Cir. 2000) (holding that the district court did not abuse its discretion in applying the § 2L1.1(b)(5) enhancement where the number of passengers exceeded the van's capacity and where "passengers were not strapped into seats with seatbelts but were instead lying unrestrained on floorboards and across seats."); United States v. Maldonado-Ramires, 384 F.3d 1228, 1231 (10th Cir. 2004) (affirming a § 2L1.1(b)(5) enhancement where defendant transported aliens in a minivan altered to remove the rear seats and seatbelts, defendant was the only driver on a lengthy trip from Arizona to Florida, and defendant mandated that passengers always remain prone on the floor of the van).

C

We have found no published opinions that address the particular circumstances created by Solis in transporting four aliens in the cargo area of the minivan. Other cases have found that § 2L1.1(b)(5) applies where the defendant has smuggled aliens in an overcrowded vehicle, often without seats or seat belts. See,

8

e.g., <u>United States v. Jose-Gonzales</u>, 291 F.3d 697 (10th Cir. 2002); <u>United States v. Ramirez-Martinez</u>, 273 F.3d 903 (9th Cir. 2001); <u>United States v. Ortiz</u>, 242 F.3d 1078 (8th Cir. 2001). In all of the cited cases, however, the overcrowding was severe and easily distinguishable from Solis's transportation of eight individuals in a minivan designed to seat seven. Even if we consider the capacity of the van to be only four (the number of seats present), this does not approach the overcrowding present in these other cases. The closest case to ours is <u>Hernandez-Guardado</u>, cited by the Government. 228 F.3d at 1027-28. This case, however, does not provide the Government the silver bullet that it seeks. Not only did the Ninth Circuit review the district court's enhancement for abuse of discretion, whereas we are not bound by such deference to the district court, the Ninth Circuit recognized in <u>Hernandez-Guardado</u> that "[r]easonable minds could differ as to the severity of the overcrowding in the vans and the resulting degree of risk." <u>Id</u>. at 1028.

Left without clear precedent to follow or adopt, our own analysis convinces us that Solis's conduct did not create a <u>substantial</u> risk of <u>death</u> or <u>serious</u> bodily injury to the aliens that she was transporting. Although the § 2L1.1(b)(5) enhancement "applies to a wide variety of conduct," that conduct is described by way of example as conduct that "poses inherently dangerous risks to the aliens being transported." <u>See</u> <u>Garcia-Guerro</u>, 313 F.3d at 896. The enhancement is meant to impose additional punishment on

9

those individuals who commit the base offense of smuggling, transporting, or harboring an unlawful alien in a particular manner that involves those inherently dangerous practices that produce substantial risks of death or serious bodily injury. We do not believe the act of transporting four aliens lying in the cargo area of a minivan, with no aggravating factors, constitutes an inherently dangerous practice such as to create a substantial risk of death or serious bodily injury to those aliens.

We have recognized before that the risks to aliens being transported in a pickup bed is greater than the risks to those unrestrained passengers in a van, "as they are not protected by the passenger compartment of the vehicle." Cuyler, 298 F.3d at 391. An individual riding in the cargo area of a minivan has access to oxygen, is not exposed to extreme heat or cold, and can easily extricate himself from his position on the floor of the van. In this case, it is not asserted that the van was overcrowded, that Solis was undertaking a particularly long and/or unsafe journey, or that the aliens were subjected to any other risks. The only dangers we consider to be associated with riding in the cargo area of the minivan are generally the same dangers that arise from an individual not wearing a seatbelt in a moving vehicle. The § 2L1.1(b)(5) enhancement as written, one would think, does not extend so far as to increase punishment for offenders simply for transporting illegal aliens without requiring them to wear seatbelts.

The application of the § 2L1.1(b)(5) enhancement is meant to be flexible; but its words must be given some restrictive meaning. Defining the contours of this enhancement is dependent upon carefully applying the words of the guideline in a case-specific analysis.  In this case we cannot say that Solis created a <u>substantial</u> risk of <u>death</u> or <u>serious</u> bodily injury by transporting four aliens lying side by side in the cargo area of the minivan.

III

For the foregoing reasons, we VACATE Solis's sentence and REMAND for re-sentencing in accordance with this opinion.

VACATED and REMANDED.