**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 31, 2006**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 06-40081

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GINALDO ZUNIGA-AMEZQUITA,

Defendant-Appellant.

———————

Appeal from the United States District Court
for the Southern District of Texas
m 5:05-CR-1170-1

———————

Before JONES, CHIEF JUDGE, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ginaldo Zuniga-Amezquita appeals the enhancement of his sentence. Because his method of transporting aliens created a substantial risk of death or serious bodily injury, we affirm.

I.

Zuniga-Amezquita pulled his van into the inspection lane of a Border Patrol checkpoint, whereupon agents discovered five undocumented Mexican nationals lying side-by-side in the cargo area, concealed behind boxes and luggage that were stacked to the van's ceiling.

Some of the boxes contained bottles of beer.[1] The court did not determine whether the boxes had been placed on top of the aliens, instead of merely around them, but for sentencing purposes "accept[ed] the defendant's word that there was nothing heavy piled immediately on top of these individuals." We also adopt that assumption.

The agents found, in Zuniga-Amezquita's possession, $3,132 in cash, 3,600 Mexican pesos, and four handwritten lists showing 177 names accompanied by the names of Mexican cities and dollar amounts. Two of the aliens said they had each paid $1,500 to be smuggled to Houston. Zuniga-Amezquita admitted to the agents that he had been hired to transport the aliens.

Zuniga-Amezquita was charged with two counts of bringing in and harboring certain aliens in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 2. He pleaded guilty to count one, and count two was dismissed on the government's motion. The presentence report included, *inter alia*, a suggested enhancement in the offense level from 12 to 18 because the method of transporting aliens "intentionally or recklessly creat[ed] a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(5) (2005).

Zuniga-Amezquita objected, maintaining that the enhancement was not warranted because the back seats of the van had been removed, allowing the aliens ample room to lie side-by-side. The aliens were able to communicate with Zuniga-Amezquita, and their ability to breathe was not hindered by the boxes and luggage used to conceal them.[2]

The court overruled the objection, concluding that if the van had to stop suddenly the boxes and luggage could fly around and injure the aliens. If an accident occurred the boxes could conceal the aliens such that emergency personnel might be unable to see them and might not search for them because it is counterintuitive that passengers would be

---

[1] Zuniga-Amezquita contends on appeal that the boxes did not contain bottles, despite pictures in the record evincing that fact. Also, Zuniga-Amezquita's counsel admitted at the sentencing hearing that some of the boxes used to conceal the aliens contained beer: "From reviewing the pictures, as you open up the doors, the first thing you see are the suitcases and the boxes of beer, and behind that were the individuals laying [*sic*] side by side with boxes on top of them."

[2] On appeal, Zuniga-Amezquita also contends that the government offered insufficient evidence about the placement of the boxes and luggage and that the photographs depicting the location of the aliens and boxes were insufficiently authenticated. These arguments were not raised in the district court, so we review them only for plain error, a difficult standard to satisfy. *United States v. Clayton*, 172 F.3d 347, 351 (5th Cir. 1999). Zuniga-Amezquita's counsel, arguing at the sentencing hearing that nothing heavy was placed on top of the aliens (a fact we assume), implicitly conceded that the pictures accurately depict the location of the aliens and the boxes:

> From reviewing the pictures, we do concede that it was neither appropriate, considerate, or nice to transport human beings or put human beings in that position. Nobody would like for a family member, a friend, to be placed in a position of that nature. Yet, Mr. Zuniga, in an attempt to commit this crime tried to conceal these individuals to the best of his abilities.

Counsel further admitted that the aliens were behind stacked boxes and luggage, *see supra* n.1, and later that boxes were placed "around" the aliens. There is no plain error.

2

underneath a large pile of boxes and luggage in the cargo area of a van. Finally, the boxes and luggage could prevent the aliens from exiting the vehicle. These were not "little boxes that you could push aside." The court stated that had the aliens been hidden with clothing, which is obviously lighter and smaller than boxes and luggage, "that would be a different situation." Based on the foregoing, the court concluded that the method Zuniga-Amezquita used to transport the aliens created a substantial risk of death or serious bodily injury.

## II.

After *United States v. Booker*, 543 U.S. 220 (2005), we continue to review a district court's interpretation and application of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006) (citing *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005); *United States v. Creech*, 408 F.3d 264, 270 & n.2 (5th Cir.), *cert. denied*, 126 S. Ct. 777 (2005). The commentary to § 2L1.1(b)(5) lists examples of conduct warranting the enhancement: "transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition." U.S.S.G. § 2L1.1(b)(5) cmt. n.6.[3] Although the factual situation in this caseSSconcealing aliens with boxes and luggageSSis not expressly included in the list, this guideline is not limited to the examples provided in the

___

[3] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

commentary. *United States v. Rodriguez-Mesa*, 443 F.3d 397, 401 (5th Cir. 2006) (citing *United States v. Garcia-Guerrero*, 313 F.3d 892, 896 (5th Cir. 2002)).

The contours of this sentencing enhancement depend on a careful application of the guidelines on a case-specific basis. *United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005). A summary of four recent decisions illustrates these contours and the framework we have used to determine the applicability of § 2L1.1(b)(5).

The defendant in *United States v. Cuyler*, 298 F.3d 387 (5th Cir. 2002), was paid to transport ten illegal aliens from San Antonio to Houston. Six rode in the cab of an extended-cab pickup truck, and four lay side-by-side in the bed. Cuyler's method of transporting the aliens justified the enhancement, because passengers "easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving." *Id.* at 391.

This risk distinguished Cuyler's method of transporting aliens from that of the defendant in *Dixon*, a Ninth Circuit case cited several times by this court in § 2L1.1(b)(5) cases, in which two aliens were smuggled in the hatchback area of a car. *Cuyler*, 298 F.3d at 390 (citing *United States v. Dixon*, 201 F.3d 1223, 1234 (9th Cir. 2000)). The *Dixon* court held that this method did not warrant the enhancement, because passengers in the hatchback area of a car, unlike those in the trunk, are not deprived of oxygen and can easily extricate themselves by lifting the flimsy covering of the hatchback area. *Dixon*, 201 F.3d at 1223.

We revisited § 2L1.1(b)(5) in *Solis-Garcia* and held that "*without further aggravating*

*factors*, [defendant's] conduct in transporting seven aliens, only four of whom were lying down in the cargo area of the minivan, does not constitute 'intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person.'" *Solis-Garcia*, 420 F.3d at 512 (emphasis added). As distinguished from the circumstances in *Cuyler*, the aliens in *Solis-Garcia* were protected by the passenger compartment of the minivan. They had access to oxygen, were shielded from extreme temperatures, and could easily and quickly extricate themselves from the vehicle if needed. *Id*. at 516. The only dangers were the same dangers arising from a passenger not wearing a seatbelt in a moving vehicle. *Id.* We left for future cases the task of identifying the "aggravating factors" that warrant the application of § 2L1.1(b)(5).

In *Rodriguez-Mesa* we identified one of these aggravating factors. The defendant was apprehended transporting an illegal alien from Mexico to Houston; the alien was concealed in a compartment built into the center console of a minivan. *Rodriguez-Mesa*, 443 F.3d at 398. The cramped compartment covered the alien's head and torso, and his legs extended out of the compartment onto the floorboards of the vehicle. *Id*. We held that because he could not easily extricate himself from the compartment, transporting him in this manner constituted an aggravating factor under *Solis-Garcia* and thus justified the application of the sentencing enhancement. *Id*. at 403.

### III.

Given that transporting aliens in the cargo area of a van, without more, does not justify the application of § 2L1.1(b)(5), we must now decide whether the additional factor of stacking boxes and luggage around the aliens constitutes an aggravating factor such that Zuniga-Amezquita's method of transportation

rises to the level of creating a substantial risk of death or serious bodily injury. Although the application of § 2L1.1(b)(5) requires a fact-specific inquiry, the cases described above provide a useful framework for evaluating situations not explicitly listed in the commentary to the guideline. Despite the fact that a single, bright-line test is not necessarily appropriate for a guideline that must be applied to a wide variety of factual settings, we have articulated five factors to consider when applying § 2L1.1(b)(5): the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs.[4]

The first three factors are not disputed in the present case: The aliens were able to breathe freely, the temperature in the van was not excessive, and the aliens could communicate with Zuniga-Amezquita. The applicability of § 2L1.1(b)(5) thus turns on the final two factors.

### A.

Transporting aliens in a manner that significantly hinders their ability to exit the vehicle quickly creates a substantial risk of death or serious bodily injury. *Dixon* and *Rodriguez-Mesa* illustrate the application of this factor to specific transportation methods. The *Dixon* court held that transporting aliens in the hatchback area of a car did not warrant the sentencing enhancement, because the flimsy hatchback cover did not sufficiently impede the aliens' ability to exit the vehicle. We found, in *Rodriguez-Mesa*, that transporting an alien by placing his torso in a

---

[4] This list is not exhaustive, and future factual situations may present additional factors.

compartment from which it was difficult to extricate himself did warrant the enhancement.

Zuniga-Amezquita's method of transporting aliens is more like the method in *Rodriguez-Mesa* than the one in *Dixon*. The district court found that boxes and luggage were "practically piled up to the top of the van." The boxes were stacked on all sides of the aliens; there was no gap through which they could exit. Indeed, the boxes were placed to ensure that no such gaps would exist, so customs officials would be unable to detect the aliens. The court also found that "these are not little boxes that you could push aside," distinguishing the hatchback cover in *Dixon*.

Stacked boxes and luggage obviously impede the ability to move freely and to exit the vehicle quickly. This is particularly so if, as here, the boxes and luggage are packed so tightly around the aliens that there is no place to set a box that has been moved out of the way. The van door was covered by a wall of boxes, some containing bottles of beer and thus quite heavy and difficult to move. With no place to which to move these boxes, the aliens would be unable to access the door and exit the van. They would have a much more difficult time exiting the vehicle than did the aliens in *Dixon*, who needed only to lift the flimsy hatchback cover and open the back door of the car, or even than did the alien in *Rodriguez-Mesa*, whose exit from the vehicle was unimpeded once he extricated himself from the compartment.

### B.

The application of § 2L1.1(b)(5) is warranted if a method of transportation exposes aliens to a substantial risk, in the event of an accident, of death or serious bodily injury. The risk must, however, be greater than that of an ordinary passenger not wearing a seatbelt in a moving vehicle. *Cuyler* and *Solis-Garcia* illustrate the application of this factorSStransporting aliens in the bed of a pickup truck creates a substantial risk of death or serious injury and warrants the sentencing enhancement, but merely transporting them in the cargo area of a minivan, without seatbelts, does not.

Zuniga-Amezquita's transportation method differed from those of the defendants in those two cases. Unlike the facts in *Cuyler*, the aliens were protected by the passenger compartment of the van and were not in danger of being ejected; the stacked boxes and luggage presented a risk not present in *Solis-Garcia*. Thus we consider whether, in the event of an accident, the stacked boxes and luggage constituted an aggravating factor that created a substantial risk of death or serious bodily injury.

The district court found that in the event of an accident the boxes and luggage could fly around and strike or land on top of the aliens. Although some of the boxes were empty, some contained bottles of beer. These boxes could become dangerous projectiles if they began moving freely about the van's cargo area. If the boxes containing bottles were torn open, individual bottles of beer could fly about the cargo area, and bottles could also break, scattering glass.

Being struck by a flying box, piece of luggage, bottle of beer, or glass could cause serious bodily injury. Zuniga-Amezquita's transportation method placed the aliens in danger of incurring such an injury in the event of an accident. The risk of injury was greater than that faced by an ordinary passenger, without a seatbelt, who is not surrounded by boxes and luggage piled to the ceiling of a vehicle.

AFFIRMED.