**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-41197

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JESUSITA FELIPITA GARZA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARZA, and HAYNES, Circuit Judges.

PER CURIAM:

Jesusita Filipita Garza ("Garza") appeals her 21-month sentence under 8 U.S.C. § 1324(a)(1)(B)(i) for transporting aliens unlawfully in this country for the purpose of commercial advantage or private financial gain. Garza raises three issues on appeal: 1) whether the district court erred by imposing a "reckless endangerment" enhancement to her sentence under UNITED STATES SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2L1.1(b)(6); 2) whether the district court erred by entering judgment under 8 U.S.C. § 1324(a)(1)(B)(i), which requires a financial gain motive, rather than 8 U.S.C. § 1324(a)(1)(B)(ii), which does not; and 3) whether the district court erred by failing to reduce her sentence under U.S.S.G. § 2L1.1(b)(1) for an act committed "other than for profit." We

AFFIRM the conviction and sentence but REMAND to the district court with instructions to correct the judgment to reflect that Garza only pled guilty to, and was only convicted of, a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), with a maximum sentence as prescribed by 8 U.S.C. § 1324(a)(1)(B)(ii), and to delete the reference to "for commercial advantage or private financial gain" from the judgment.

## I. FACTS AND PROCEEDINGS BELOW

On February 9, 2008, Garza drove an extended-cab Dodge pickup truck to the United States border patrol checkpoint located twenty-nine miles north of Laredo, Texas, on Interstate 35. She was accompanied by two visible passengers: her one-and-one-half-year-old child and a friend. During primary inspection at the checkpoint, a border patrol canine alerted to the presence of hidden persons in the vehicle. The border patrol officers then referred the vehicle to the Vehicle and Cargo Inspection System (VACIS), a large x-ray machine, which detected an object underneath the back seat of the pickup truck. Border patrol officers searched the back seat and discovered two men who admitted to being Mexican citizens illegally present in the United States.

Garza was taken into custody and advised of her rights. She admitted to the officers that she knew that the aliens she was transporting were illegally in the United States. She claimed she had stopped at a gas station where the men had asked for a ride. Garza went on to admit that she had agreed to give the men a ride past the border control checkpoint to a bus station but claimed that she had not discussed payment with the men and she did not expect to receive any compensation for transporting them.

The presentence report (PSR) cited a statement by one of the aliens. According to the statement, Garza told the men to get in the truck and hide underneath the back seat. Both men squeezed side-by-side while lying on their stomachs. Garza's child sat on top of the seat. The position was uncomfortable, warm, and limited mobility. They rode in this manner for approximately forty

minutes. The probation officer opined in the PSR that the aliens could have been seriously injured had Garza been involved in an accident.

Garza was indicted for transporting an alien unlawfully in this country within the United States for purposes of commercial advantage or private financial gain, under 8 U.S.C. § 1324. Garza consented to allow a magistrate judge to accept her guilty plea. At rearraignment, Garza's counsel informed the magistrate judge that Garza was pleading guilty to the indictment without a plea agreement, but that Garza had an agreement with the government to reserve the issue of financial gain for sentencing. The district court accepted Garza's guilty plea upon the recommendation of the magistrate judge and entered judgment. The judgment stated that Garza had pled guilty under 8 U.S.C. § 1324(a)(1)(B)(i)[1] to the offense of "[t]ransporting an undocumented alien within the United States by means of a motor vehicle for commercial advantage or private financial gain."

The Sentencing Guidelines calculation proposed in the PSR began with an offense level of 12 pursuant to U.S.S.G. § 2L1.1(a)(3) (applicable to the smuggling, transporting, or harboring of an unlawful alien). That level was increased to 18 under the "reckless endangerment" enhancement of U.S.S.G. § 2L1.1(b)(6), which applies "[i]f the [alien transporting] offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury." The level 18 calculation was reduced to level 15 for acceptance of responsibility under U.S.S.G. § 3E1.1(a)–(b). Ultimately, the PSR recommended

---

[1] Although the judgment listed only one statute of conviction, it necessarily incorporated a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), which imposes criminal penalties on "[a]ny person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law." The statute of conviction, 8 U.S.C. § 1324(a)(1)(B)(i), imposes a ten-year maximum sentence for violations of § 1324(a)(1)(A)(ii) committed "for the purpose of commercial advantage or private financial gain."

an offense level of 15 with a criminal history category of II resulting in a Guidelines range of twenty-one to twenty-seven months.

Garza objected to the PSR, arguing that the manner in which she transported the aliens did not warrant imposing a § 2L1.1(b)(6) enhancement. She renewed this objection at sentencing.[2] Garza did not, in her objections to the PSR or at sentencing, argue that the statute under which judgment was entered was improper or raise any other challenge to the calculation of her sentence under the Guidelines. The district court overruled her objection to the § 2L1.1(b)(6) adjustment for reckless endangerment and sentenced Garza to twenty-one months imprisonment and three years of supervised release. This appeal followed.

On appeal, Garza renews her objection to the enhancement under § 2L1.1(b)(6). She also argues that because no financial gain motive was ever admitted or established, her conviction under 8 U.S.C. § 1324(a)(1)(B)(i), which applies to offenses "done for the purpose of commercial advantage or private financial gain," was reversible error, and that the district court should have applied a three-level reduction to Garza's Guidelines calculation under U.S.S.G. § 2L1.1(b)(1) for offenses "committed other than for profit."

## II. STANDARD OF REVIEW

When the relevant objections are properly preserved, this court reviews a district court's interpretation of the Sentencing Guidelines de novo and its factual determinations for clear error. *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005) (per curiam). We review the legal sufficiency of a conviction de novo. *See United States v. Phillips*, 219 F.3d 404, 409 (5th Cir. 2000) ("We review questions of law and application of statutes de novo.")).

---

[2] Garza also sought a downward variance under 18 U.S.C. § 3553(a) in her objections to the PSR and at sentencing. This request was denied, and she does not renew it on appeal.

When the issues on appeal have not properly been preserved, we review for plain error. *United States v. Davis*, 487 F.3d 282, 284 (5th Cir. 2007). To establish plain error, an appellant must show a forfeited error that is clear or obvious and that affected his substantial rights. *Puckett v. United States*, --- U.S. ---, 129 S. Ct. 1423, 1429 (2009). Ordinarily, an error affects substantial rights only if it "'affected the outcome of the district court proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)); *accord Davis*, 487 F.3d at 284. If the appellant makes this showing, "the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett*, 129 S. Ct. at 1429 (quoting *Olano*, 507 U.S. at 736) (internal quotation marks omitted, alteration in original).

## III. DISCUSSION

### A. Whether the "Reckless Endangerment" Enhancement was Proper

Garza renews her contention, raised in her objections to the PSR and at sentencing, that the district court erred when it determined that her offense qualified for a six-level "reckless endangerment" enhancement under U.S.S.G. § 2L1.1(b)(6). Section 2L1.1(b)(6) reads in relevant part:

> (6) If the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18.

The district court concluded that the manner in which the aliens were traveling—lying on the floorboards, partially under the back seat and "wedged between" the front seat and the back seat, with a child sitting on top of the back seat—created a qualifying risk and applied the enhancement. In light of the court's findings, the relevant test, and the extant case law, we find no reversible error in the district court's construction of § 2L1.1(b)(6).

On appeal, Garza first contests the district court's factual conclusion that the aliens' positions in the vehicle would impede their ability to exit and increase their risk of injury. At sentencing, Garza's counsel referred the district court to a photograph of the aliens when they were found in the pickup truck,[3] and argued that the aliens' positions were not dangerous: "[B]oth [were] on the floorboard[s]," with "one [also] under the [back]seat," "they were able to talk to the driver," and "they could breathe." The district court did not dispute this description of the aliens' positions, but concluded that the situation nevertheless appeared dangerous:

> Now, I'm looking at this picture, and if this car had been in a wreck, do you think both of these gentlemen could have gotten out of there without causing damage to each other? I mean, the fact of the matter is, they were jammed into a very small area where . . . if there had been a wreck, who knows what would have happened to them. They're not restrained. And then when the panic would set in in a wreck and they tried to get out, the endangerment to them as a result of this is quite obvious, as far as I see.
> . . . .
> [T]hey were jammed in there. . . . [W]hile there was oxygen, I'm sure it's not the same amount of oxygen that you would have had . . . if you'd been sitting up in the seat and belted in. This was not a situation where they were belted in or sitting up or anything. They were jammed or wedged in between two seats.

Garza's counsel also urged that the child's presence on the back seat did not render the situation dangerous, reasoning that "it strains credibility that an infant child on top of a seat would prevent anybody from getting out from under the seat." The district court responded that the child on the back seat simply "compound[ed]" the problem by "add[ing] another person in there to get out in the event of a wreck."

As discussed above, a district court's factual determinations with respect to sentencing are reviewed for clear error, and we will not find clear error if the

---

[3] The photograph was not included in the record on appeal.

district court's finding is plausible in light of the record as a whole. *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). The district court's factual determination that the aliens' positions in the vehicle would impede their ability to exit and increase their risk of injury is supported by evidence in the record. According to the PSR, one of the aliens stated that he was uncomfortable, warm, and unable to move. The aliens were positioned such that border patrol agents did not find them until the pickup truck was sent through the VACIS machine. A child was sitting on top of the back seat and would have been in the way of the aliens if they tried to exit the vehicle. The district court's conclusion that the men would have had significant added difficulty exiting the vehicle and would have sustained additional injury in the event of an accident does not constitute a clear error on the record before us.

Garza next contends that the district court erred as a matter of law in its interpretation of § 2L1.1(b)(6) and its application of factual findings to that enhancement. In *United States v. Zuniga–Amezquita*, 468 F.3d 886 (5th Cir. 2006), we announced a list of five non-exhaustive factors to be considered in applying the "reckless endangerment" enhancement. Specifically, *Zuniga–Amezquita* held that a court should consider: 1) the availability of oxygen; 2) exposure to temperature extremes; 3) the alien's ability to communicate with the driver of the vehicle; 4) the alien's ability to exit the vehicle quickly; and 5) the danger to the alien if an accident occurs. *Id.* at 889. Garza argues that the aliens in her pickup truck could breathe easily, were not exposed to extreme temperatures, and could communicate with her without difficulty. But a given case need not satisfy all five factors to warrant application of § 2L1.1(b)(6). *Id.* (upholding application of § 2L1.1(b)(6) using only the final two factors). Here, the aliens were on the floorboards, partially under the back seat, and wedged between the front and back seats. This configuration would have prevented them from easily exiting the vehicle, increasing the

7

potential danger in the event of an accident. Moreover, *Zuniga–Amezquita* specifically allows us to consider new factors related to this analysis on a case-by-case basis. *Id*. at 889 n.4. Though not an express factor, we note that placing a child on top of the seat and in the way of the aliens' means of exit certainly exacerbated the risk to both the aliens and to Garza's child.

Garza urges reversal based on our decision in *United States v. Solis–Garcia*, 420 F.3d 511 (5th Cir. 2005). In *Solis–Garcia*, we concluded that transporting several aliens in the cargo area of a minivan from which the seats had been removed was insufficient to justify imposing a § 2L1.1(b)(6) enhancement. *Id*. at 516. We reasoned that "[t]he only dangers we consider to be associated with riding in the cargo area of the minivan are generally the same dangers that arise from an individual not wearing a seatbelt in a moving vehicle," and concluded that the enhancement "does not extend so far as to increase punishment for offenders simply for transporting illegal aliens without requiring them to wear seatbelts." *Id*. In *Solis-Garcia*, however, there were no "wedged" or "jammed" conditions such as we have here. Thus, although *Solis–Garcia* may set a minimum threshold for applying § 2L1.1(b)(6), it is not sufficiently analogous to this case to control our analysis.

Instead, Garza's offense is more similar to the offenses in *Zuniga–Amezquita*, 468 F.3d at 889, and *United States v. Rodriguez–Mesa*, 443 F.3d 397, 403 (5th Cir. 2006) (per curiam). In both of these cases, we upheld the application of the "reckless endangerment" enhancement primarily because it would have been difficult for the aliens to extricate themselves from their positions in the event of an accident. We upheld the enhancement despite the facts that the aliens had ample oxygen, were not exposed to extreme temperatures, and were able to communicate with the drivers. In *Zuniga–Amezquita*, 468 F.3d at 887, the aliens were transported lying side-by-side in the cargo area of a van from which the seats had been removed. Boxes,

some containing heavy objects, were piled around the aliens to conceal them and obstructed the van door. In *Rodriguez–Mesa*, 443 F.3d at 403, an alien was transported in a console box between the passenger seats. The lid to the console box could be opened easily, but exit from the box was impeded by the fact that the alien's legs did not fit inside the box but instead extended to the floorboard of the front passenger's side of the vehicle and curled underneath the glove compartment. In both of these cases, we concluded that the aliens' positions could have made it substantially more difficult for them to extricate themselves from the vehicles in case of emergency, and upheld the "reckless endangerment" enhancement on that basis. *See Zuniga–Amezquita*, 468 F.3d at 890 ("Stacked boxes and luggage obviously impede[d] the ability to move freely and to exit the vehicle quickly."); *Rodriguez–Mesa*, 443 F.3d at 403 ("[T]he photographs indicate that it would have been difficult to extricate [the alien], regardless of whether the lid of the console opened easily, because of [his] crammed position in the compartment.").

As in *Zuniga–Amezquita* and *Rodriguez–Mesa*, the aliens in this case would have been impeded from freely exiting Garza's truck by their cramped, "jammed" position, in which they lay on the floorboards, squeezed partially under the back seat, and were "wedged" between the front and back seats. The small child on the back seat could have complicated any rescue efforts. In short, the aliens in Garza's truck faced significantly greater danger than they would have faced if they were simply on the floorboards without a seatbelt, as in *Solis–Garcia*. Consequently, we see no error in the district court's legal conclusion that an enhancement under § 2L1.1(b)(6) for reckless endangerment was appropriate.

## B. Whether Judgment Under § 1324(a)(1)(B)(i) was Reversible Error

Garza contends that the district court reversibly erred in entering judgment under 8 U.S.C. § 1324(a)(1)(B)(i) rather than under 8 U.S.C.

§ 1324(a)(1)(B)(ii). Both sections involve the same offense conduct—transporting an alien unlawfully present in the United States within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii)—but the former requires a showing that the act was undertaken for commercial advantage or private financial gain, while the latter does not. Section 1324(a)(1)(B)(i), under which Garza was convicted, carries a maximum sentence of ten years, while § 1324(a)(1)(B)(ii) carries a maximum sentence of five years. Garza did not raise this objection in the district court, although at rearraignment she did state that she was not pleading guilty to acting with a financial gain motive, and that she was reserving the issue of financial gain motive for sentencing. We do not decide whether Garza's statements at rearraignment were sufficient to preserve her objection because under any standard of review, the entry of judgment under § 1324(a)(1)(B)(i) was error but the appropriate remedy is limited to amending the judgment.

The parties agree, and the record confirms, that no financial gain motive was established in this case. To the contrary, the record suggests that the men had no ability to pay and actually asked Garza for money before asking for a ride. Although the district court initially stated in its colloquy that it "assume[d]" Garza committed the offense "because somebody was paying [her]," the exchange that followed suggests even the court was satisfied that Garza had not acted for financial gain. In short, nothing supports a finding of "commercial advantage or private financial gain" under 8 U.S.C. § 1324(a)(1)(B)(i); only the penalty described in 8 U.S.C. § 1324(a)(1)(B)(ii) is applicable. Garza argues that the judgment was reversible error. The Government concedes that the judgment was error, but argues that Garza's only remedy is an amended judgment reflecting the proper statute of conviction because the twenty-one month sentence imposed is lower than the five-year maximum prescribed under the correct statute.

We addressed a similar situation in *United States v. Compton*, 295 F. App'x 674 (5th Cir. 2008) (per curiam). In *Compton*, as here, the judgment entered after the defendant's guilty plea reflected conviction under § 1324(a)(1)(B)(i) despite the fact that the defendant never admitted a financial gain motive. We held that the district court erred in entering the judgment, which should have reflected conviction under § 1324(a)(1)(B)(ii), which has no financial gain element. We concluded that the error did not require reversal, however, because the sentence ultimately rendered fell below the five-year maximum sentence under § 1324(a)(1)(B)(ii) and therefore did not violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We concluded that the appropriate remedy was a correction to the judgment. *Id.* at 675. Though unpublished, *Compton*'s well-reasoned determination in a nearly-identical situation renders it highly instructive.

Additionally, even if Garza's downward variance claim had been properly preserved, Garza has presented no evidence to suggest that the "financial gain" aspect of § 1324(a)(1)(B)(ii) informed the district court's decision. Instead, the sentencing colloquy suggests the opposite. While the court initially stated that it believed Garza had acted for profit, Garza disputed that point and the court appeared to accept her explanation. The court then went on to explain that it would not grant a downward variance for three reasons: 1) Garza's failure to learn from her prior mistakes; 2) the discomfort and risk imposed on the aliens; and 3) the risk to Garza's child created by Garza's crime. We can conceive of a case where a district court's decision to inappropriately consider the "financial gain" element could require resentencing but this is not that case. The court did not in any way suggest that it rejected Garza's argument that she did not act for profit and nothing else suggests that financial gain otherwise factored into the district court's decision. As such, nothing supports Garza's contention that the

district court's decision to sentence her under the enhanced financial gain provision affected the resulting sentence.

The error in the judgment entitles Garza to an amended judgment reflecting conviction under 8 U.S.C. § 1324(a)(1)(B)(ii) but not a reversal. The district court should amend Garza's sentence to reflect that it was imposed under 8 U.S.C. § 1324(a)(1)(A)(ii) (which defines the crime) as well as 8 U.S.C. § 1324(a)(1)(B)(ii) (which imposes the maximum sentence for § 1324(a)(1)(A)(ii) violations committed without a financial gain motive), and should eliminate the reference to "for commercial advantage or private financial gain."

## C. Whether Resentencing is Appropriate Under § 2L1.1(b)(1)

Finally, Garza contends that because there was no financial gain motive, at sentencing the district court should have reduced her initial offense level under U.S.S.G. § 2L1.1(b)(1), which dictates a three-level reduction for alien smuggling offenses "committed other than for profit." Garza seeks resentencing on this basis. Garza did not raise this issue in her written objections to the PSR or at sentencing, but we need not decide the appropriate standard of review because it would not affect the result. The Government concedes that Garza was entitled to this reduction, but argues that the issue is moot because the reduction would not have affected the sentence in this case. We agree. Were we to accept Garza's argument, the steps in the PSR calculation would change but the outcome would be the same.

According to U.S.S.G. § 1B1.1(b), we must apply sentencing enhancements in the order they are listed. As such, applying § 2L1.1(a)(3), Garza's initial offense level would be 12. The three-level reduction under § 2L1.1(b)(1) would leave her with an offense level of 9. The application of the "reckless endangerment" enhancement under § 2L1.1(b)(6) would then raise her offense level to 18, which would again be reduced by three levels for acceptance of responsibility under § 3E1.1(a)–(b). As such, even applying § 2L1.1(b)(1), Garza

would still face a level 15 sentencing range. Garza is not entitled to resentencing.

## IV. CONCLUSION

We affirm the district court's application of the "reckless endangerment" enhancement under U.S.S.G. § 2L1.1(b)(6). We conclude that the district court erred in entering judgment under 8 U.S.C. § 1324(a)(1)(B)(i) because Garza did not plead guilty to acting with a financial gain motive, but that the appropriate remedy is limited to remand for correction of the judgment. We hold that although the district court did not apply a reduction under § 2L1.1(b)(1), Garza is not entitled to resentencing because the reduction would not affect the sentencing level of her conviction.

Accordingly, we AFFIRM Garza's conviction and sentence but REMAND to the district court with instructions to correct the judgment to reflect that Garza only pled guilty to, and was only convicted of, a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), with a maximum sentence as prescribed by 8 U.S.C. § 1324 (a)(1)(B)(ii), and to delete the reference to "for commercial advantage or private financial gain" from the judgment.