# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2011

No. 10-41353

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARCOS ANTONIO BAILON,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:10-CR-971-1

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Marcos Antonio Bailon, who pleaded guilty to one count of transporting an illegal alien, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(i), challenges his sentence. Primarily at issue is whether the district court erred in applying an enhancement for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person", Sentencing Guideline § 2L1.1(b)(6), based on Bailon's giving a sleep-aid drug,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-41353

which was not consumed, to the minor alien he was transporting. CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.

I.

The facts are undisputed. On 3 August 2010, Border Patrol Agents at the Sarita, Texas, checkpoint inspected an automobile driven by Bailon. With Bailon were two adults, including Lucy Ybarra-Contreras, and a seven-year-old girl. At secondary inspection, the minor told Agents: she was a citizen of El Salvador present in the United States illegally; and Ybarra-Contreras had given her a blue tablet to help her fall asleep before they reached the checkpoint. The Agents recovered the tablet from the minor and identified it as a TopCare Nighttime Sleep Aid 25-milligram mini-caplet.

Regarding the drug, the pre-sentence investigation report (PSR) recommended: "[T]here is no evidence [Bailon and Ybarra-Contreras] placed the minor in imminent danger [of] serious bodily injury". Both parties filed notice of no objections to the PSR.

On 10 December 2010, the district court notified the parties it would consider an upward departure from the advisory Guidelines or, alternatively, a six-level sentence enhancement for endangerment. The base offense level for transporting an illegal alien is 12. U.S.S.G. § 2L1.1. Under specific offense characteristic (b)(6),

> [i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18.

U.S.S.G. § 2L1.1(b)(6). (The PSR also recommended a two-level enhancement under Guideline § 2L1.1(b)(4) for transporting a minor unaccompanied by a parent or grandparent.)

No. 10-41353

At sentencing on 20 December, the Government offered, and the court admitted without objection, the TopCare Nighttime Sleep Aid label, which warns: "Do not use in children under 12 years of age". After hearing argument from the parties concerning the danger the drug posed to the minor, the court ruled:

> I'm going to amend the [PSR] orally here and impose the six-point endangerment enhancement. I find that *giving any drug*, be it over the counter, be it prescription, to a child that's not your child so that you're purposely trying to put them to sleep so they'll sleep through the checkpoint, that you're endangering that child because you don't know how that child is going to react to that drug. And especially giving him one or her one that the instructions say do not use in children . . . .

(Emphasis added.) The court then "overrul[ed] the plea agreement to the extent it calls for a waiver of appeal" to "allow [Bailon] to appeal the ruling I just made".

Before the enhancement, the advisory Guidelines sentencing range for Bailon's offense and criminal history was 10- to 16-months' imprisonment; after the enhancement, it was 18 to 24 months. Bailon was sentenced, *inter alia*, to 18-months' imprisonment.

## II.

Although post-*Booker*, the Guidelines are advisory only, and an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the advisory Guidelines sentencing range for use in deciding the sentence to impose. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). In that respect, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g.*,

3

No. 10-41353

*United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008); *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005).

Claimed procedural errors are addressed before reaching whether Bailon's conduct justifies the endangerment enhancement. Because it does not, his unreasonable-sentence claim need not be reached.

## A.

## 1.

Bailon first contends the district court "abused its discretion" by relying on evidence outside the record. He identifies as evidence "not in the record" the court's inference of a danger not explicitly warned of on the drug's label. Bailon asserts: "The label is ambiguous as to what may happen if the over-the-counter medicine is given to children under the age of 12. . . . [T]here was no evidence that the drug was dangerous when given to children younger than 12 years of age".

We would read these statements as challenging the conclusion that Bailon's conduct constitutes endangerment under Guideline § 2L1.1(b)(6) but for Bailon's insistence that the claimed error was merely procedural, *e.g.*:

> At sentencing, the district court must rule on the evidence presented. If the court decides on its own to inject evidence, or help the government meet the burden of proof, in spite of the government's lack of evidence, this negates the evidentiary standard and the purpose of the hearing.

As such, Bailon fails to explain how drawing such an inference from admitted evidence constitutes relying on evidence outside the record, nor does he direct us to any supporting authority. This inadequate briefing waives the issue. FED. R. APP. P. 28(a)(9)(A) (brief must contain "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the

appellant relies"); *United States v. Stalnaker*, 571 F.3d 428, 439-40 (5th Cir. 2009) (waiver for failure to explain adequately or cite authority).

2.

Similarly, Bailon contends the court "abused its discretion" by relying on evidence the Government "misrepresented": "The government noted the labeling on the package stated 'do not give to children *12 years of age and under*'. . . . The package warning actually reads, 'Do not use in children *under 12 years of age*'". (Emphasis added.)   Because Bailon did not preserve the claimed error at sentencing, the standard of review is plain error.  FED. R. CRIM. P. 52(b); *United States v. Navejar*, 963 F.2d 732, 734 (5th Cir. 1992) ("The contemporaneous objection rule applies equally to sentencing hearings as to trials.").

"The first limitation on appellate authority under Rule 52(b) is that there indeed be an 'error.'"  *United States v. Olano*, 507 U.S. 725, 732 (1993).  Here, there is none.  It is irrelevant in this instance whether the drug not be given to children *12 and under* or to children *under 12*; the minor was *seven.*  Moreover, it strains reason to contend the Government's misstatement had any bearing on the court's endangerment conclusion.  This is especially so as the court twice read the label's warning aloud, correctly, after the Government offered it in evidence, including once as it announced its ruling:  "[A]nd *I'm reading the instructions here*, warnings.  The first warning is *do not use in children under 12 years of age*."  (Emphasis added.)   The court obviously did not rely on the Government's misstatement of the label's warning.

3.

Bailon next contends the district court "abused its discretion" by "never address[ing] the discrepancy in the government's position on the imminent danger issue".  He maintains it was "disingenuous" of the Government to file no objections to the PSR, which included a recommendation of no dangerousness or threat of serious bodily injury, and then to offer evidence of endangerment at

sentencing: "The government's position must be consistent and clear. . . . Such actions [as these] lead to erosion of the government's credibility . . . ."

Bailon offers no further explanation on this point and cites no authority suggesting a court may not allow the Government to change its position on an enhancement after notifying the parties it will consider applying it. Again, this inadequate briefing waives the issue. FED. R. APP. P. 28(a)(9)(A).

4.

Bailon maintains the district court violated his right to due process by introducing *sua sponte* the endangerment enhancement. According to Bailon, this was not "proper procedure": "[I]f the court wishes to entertain a . . . sentence beyond the normal range, the upward departure [sic] should be birthed by the government".

Bailon explains no further and directs us to authority only for the proposition that the Government bears the burden of proof for establishing the offense level. This does not address whether a court may raise *sua sponte* a possible enhancement. This issue is also waived. FED. R. APP. P. 28(a)(9)(A).

5.

Last, Bailon contends the court impermissibly "modif[ied] the evidence presented . . . to fit the evidentiary standard" when it "amended" the PSR, thereby violating his right to due process. Review is only for plain error. *E.g.*, *United States v. Breland*, 647 F.3d 284, 290 (5th Cir. 2011).

There was no error. The court did not assist the Government in meeting its evidentiary burden. That Bailon gave the minor the drug was not in dispute. Rather, the court was adopting the PSR's recommendations, except for the recommendation that the minor was not endangered, on which point the court concluded otherwise.

No. 10-41353

## B.

As noted, the primary issue on appeal–whether Bailon's conduct constitutes endangerment under Guideline § 2L1.1(b)(6)–is not raised in Bailon's opening brief.  Rather, the Government raises the issue in its response brief, and Bailon addresses it in his reply.

Generally, our court will not consider an issue not raised in an opening brief.  *E.g.*, *United States v. Brown*, 305 F.3d 304, 307 n.4 (5th Cir. 2002).  Nevertheless, "[w]e ordinarily have the discretion to decide legal issues that are not timely raised".  *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc).  One instance in which we may exercise this discretion is "when a new issue is raised in the appellee's brief and the appellant responds in his reply brief".  *United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009) (explaining there is no unfair surprise to appellee in such a situation).  Because the preceding issues raised by Bailon sufficiently force this primary issue to the surface and it is a question of law, we will address it.

### 1.

Bailon opposed the endangerment enhancement at sentencing, citing the pertinent Guideline and arguing its inapplicability.  Accordingly, the issue was preserved in district court.  Along this line, the court recognized the appealability of the issue by, as noted, partially overruling Bailon's plea-agreement waiver expressly to allow for appeal from the ruling.  FED. R. CRIM. P. 51(b) ("[a] party may preserve a claim of error by informing the court–when the court ruling or order is made or sought–of the action the party wishes the court to take").

### 2.

As noted, when an issue is preserved, a district court's interpretation of the Guidelines is reviewed *de novo*; its factual determinations, for clear error.  *E.g.*, *United States v. Solis-Garcia*, 420 F.3d 511, 514 (5th Cir. 2005).  "We

7

No. 10-41353

review for clear error the factual findings a district court makes *in support of* its decision to apply the [Guideline] § 2L1.1(b)(6) enhancement." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (emphasis added).

Evidentiary issues arising under Guideline § 2L1.1(b)(6) often become questions of law, *i.e.*, whether the evidence suffices to show "a substantial risk of death or serious bodily injury". The effect has been that, under this provision, our court has applied clear-error deference *only* to the question whether the evidence is sufficient to support a finding of fact distinct from, but related to, the question whether the defendant's conduct "creat[ed] a substantial risk of death or serious bodily injury". *See, e.g.*, *United States v. Garza*, 587 F.3d 304, 310-11 (5th Cir. 2009) (no clear error in finding aliens' positions in vehicle impeded ability to exit and increased injury risk; reviewing *de novo* conclusion that these facts created substantial risk of serious bodily injury); *United States v. Mata*, 624 F.3d 170, 173-75 (5th Cir. 2010) (no clear error in finding stroller positioned over concealed alien impeded alien's ability to exit vehicle and would have exacerbated harm in event of accident; reviewing *de novo* conclusion that these facts created substantial risk); *Rodriguez*, 630 F.3d at 381-83 (no clear error in finding aliens were "stacked" in vehicle's cargo area but concluding, after *de novo* review, that these facts did not create substantial risk; concluding also court committed clear error in finding U-turn was reckless).

The facts of Bailon's offense are undisputed; the question whether the conduct constitutes endangerment under Guideline § 2L1.1(b)(6) is a "strictly legal one". *Solis-Garcia*, 420 F.3d at 514. *See also United States v. Rodriguez-Mesa*, 443 F.3d 397, 401 n.9 (5th Cir. 2006) ("[b]ecause there was no factual dispute regarding the facts necessary to support the enhancement in *Solis-Garcia*, the only question before the court was the application question"). Therefore, the standard of review is *de novo*. *See United States v. Torres*, 601 F.3d 303, 305 (5th Cir. 2010) ("Torres does not dispute the facts found by the

district court, but contends [the court erred in] its application of factual findings to the reckless endangerment enhancement. Thus, our review of the application of the guidelines is *de novo*.").

3.

As noted, under Guideline § 2L1.1, the base offense level for transporting an illegal alien is 12. As also noted, under specific offense characteristic (b)(6),

> [i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18.

U.S.S.G. § 2L1.1(b)(6). Thus, the question is whether giving a seven-year-old a sleep aid (even if not consumed) that instructs is not to be used in children under 12 "creat[es] a substantial risk of death or serious bodily injury". (Bailon does not dispute the adopted finding in the PSR that he and Ybarra-Contreras gave the minor the drug.)

The commentary to Guideline § 2L1.1(b)(6) instructs that the provision encompasses "a wide variety of conduct", listing as examples: "transporting persons in the trunk or engine compartment of a motor vehicle"; "carrying substantially more passengers than the rated capacity of a motor vehicle"; and "harboring persons in a crowded, dangerous, or inhumane condition". U.S.S.G. § 2L1.1 cmt. n.5.

Likewise, our court's decisions construing Guideline § 2L1.1(b)(6) (designated § 2L1.1(b)(5) in decisions from 2006 and before) revolve, and have evolved, around concealing people in vehicles. *See Solis-Garcia*, 420 F.3d 511 (transporting four aliens lying side-by-side in cargo area of minivan); *Rodriguez-Mesa*, 443 F.3d 397 (transporting alien in concealed compartment between minivan's front passenger seats); *United States v. Zuniga-Amezquita*, 468 F.3d 886 (5th Cir. 2006) (transporting five aliens lying side-by-side behind boxes and

No. 10-41353

luggage in van's cargo area); *Garza*, 587 F.3d 304 (transporting two aliens "wedged between" front seat and back seat on floor of pick-up truck, with child on top of back seat); *Torres*, 601 F.3d 303 (transporting minor in space under sleeping-area of tractor-trailer); *Mata*, 624 F.3d 170 (transporting alien under blankets, luggage, and a stroller in sport-utility vehicle's cargo area); *Rodriguez*, 630 F.3d 377 (transporting three aliens "stacked" in cargo area of vehicle).

In other words, for our court, providing a drug to a minor, even if not consumed, to induce sleep through the checkpoint is a new question. Nor has our research found a case from another circuit on this point.

In *Zuniga-Amezquita*, 468 F.3d at 889, our court articulated five factors to consider when applying Guideline § 2L1.1(b)(6): "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs". The Government contends three of these –inability to communicate with the driver of the vehicle, inability to exit the vehicle quickly, and increased danger in the event of an accident–are implicated by the facts at hand and militate in favor of an endangerment conclusion.

The Government points to the federal statutory mandate that "adequate warnings" be placed on drugs when use "by children . . . may be dangerous to health". 21 U.S.C. § 352(f)(2). The Government also cites to regulations promulgated by the Food and Drug Administration and the Consumer Product Safety Commission requiring child-resistant closures on drug products, including sleep aids, containing more than 66 milligrams of diphenhydramine–the active ingredient in the TopCare Nighttime Sleep Aid at issue–and to statements by these agencies describing the ill effects of overdosing on such drugs. (This authority was not cited to the district court.)

We hold: by giving a seven-year-old the 25-milligram over-the-counter sleep aid at hand, Bailon did not create a substantial risk of death or serious

10

No. 10-41353

bodily injury to the minor, and thus an enhancement under Guideline §2L1.1(b)(6) is not justified. The Guidelines define a "serious bodily injury" as an "injury involving *extreme physical pain* or the *protracted impairment* of a bodily member, organ, or mental faculty; or requiring medical intervention such as *surgery*, *hospitalization*, or *physical rehabilitation*". U.S.S.G. § 1B1.1 cmt. n.1(L) (emphasis added). The language of Guideline § 2L1.1(b)(6) requires that the magnitude of the potential harm be *at least* this severe *and* that the likelihood of the harm be *substantial*. The Guideline is better read not to subject Bailon's conduct, irresponsible though it was, to this enhancement.

Our holding is narrow, of course, confined to the facts at hand. Obviously, giving a person a drug would, in some circumstances, create a substantial risk of death or serious bodily injury. But, in holding Bailon's conduct did not constitute endangerment, we necessarily reject the district court's conclusion that giving *any* drug to a minor who is not your child and against the label's instructions constitutes the requisite endangerment. We reiterate that rulings that broad categories of conduct constitute endangerment are unlikely to comport with Guideline § 2L1.1(b)(6). "[W]e have implied that we will not create such *per se* rules". *United States v. Mateo Garza*, 541 F.3d 290, 294 (5th Cir. 2008). "[A]pplication of [Guideline § 2L1.1(b)(6)] requires a fact-specific inquiry . . . . [A] single, bright-line test is not necessarily appropriate for a guideline that must be applied to a wide variety of factual settings". *Zuniga-Amezquita*, 468 F.3d at 889. "Defining the contours of this enhancement is dependent upon carefully applying the words of the guideline in a case-specific analysis." *Solis-Garcia*, 420 F.3d at 516. Finally, we note the *Zuniga* factors, although helpful when assessing the risk of harm to a person concealed in an automobile, are less so when assessing the risk of harm to a person who has been given a drug but who remains in plain sight of others in the automobile.

No. 10-41353

III.

For the foregoing reasons, Bailon's conviction is AFFIRMED; his sentence is VACATED; and this matter is REMANDED for resentencing consistent with this opinion.