# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 9, 2015

Lyle W. Cayce
Clerk

No. 14-41184

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

FRANCISCO HERNANDEZ

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:14-CR-779

Before JOLLY, HAYNES, and COSTA, Circuit Judges.

PER CURIAM:*

Francisco Hernandez pleaded guilty to one count of transporting an alien within the United States for financial gain. He challenges the district court's application of a sentencing enhancement pursuant to section 2L1.1.(b)(6) of the Guidelines, which applies to smuggling conduct that creates a substantial risk of death or serious bodily injury. The district court applied that enhancement based on Hernandez's instruction to the individuals being smuggled that they "run" after border patrol stopped his vehicle. As a result, two of the aliens

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-41184

crossed a highway with one being hit by a truck.  Because the district court did not clearly err in applying the enhancement, we AFFIRM.

## I.

Hernandez agreed to transport five individuals from a stash house near the border to Falfurrias, Texas in exchange for $400 plus fuel.  During the journey north on U.S. Highway 281, at around 11:50 p.m., a Customs and Border Patrol agent noticed Hernandez's pickup truck and another one driving in tandem.  The agent also observed that Hernandez's truck appeared to carry a heavy load with several individuals onboard.  The agent initiated a stop, and Hernandez came to a stop on the shoulder.  After Hernandez told them to run,[1] the four passengers got out of the truck and fled.  Two ran east, away from the highway and over a fence toward a neighboring ranch.  The other two ran west across the highway.  The first made it safely across the road, but the second, Santos Eliseo Iracheta-Rodas, was struck by a tractor trailer and seriously injured.  Iracheta-Rodas and two other passengers were apprehended and identified as being undocumented.  Iracheta-Rodas was taken to a nearby hospital where he was treated for a broken pelvis, broken vertebrae, and rhabdomyolsis.

When questioned by agents after the stop, Hernandez admitted that he had agreed to transport the five individuals knowing that they were undocumented.  He entered a guilty plea to one count of transporting an alien for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(i).

The Presentence Report started with a base offense level of 12.  It then increased the offense level to 18 pursuant to U.S.S.G. § 2L1.1(b)(6) based on

---

[1] One of the passengers informed agents that Hernandez told them to run.  Hernandez does not challenge that he said this, only that this conduct does not support application of the enhancement.

the intentional or reckless creation of a substantial risk of death or serious bodily injury. It next applied a four-point enhancement pursuant to U.S.S.G. § 2L1.1(b)(7)(B) because one of the aliens suffered serious bodily injuries. Hernandez filed objections, which the court overruled at the sentencing hearing. At that hearing, however, the court did grant reductions in the offense level for acceptance of responsibility and early disposition that resulted in a total offense level of 17. The court then sentenced Hernandez to a prison term of 24 months, the bottom of the advisory Guideline range. In announcing the sentence, the court explained that "these situations can get very dangerous very quickly" and had Hernandez "stopped to think for a second about how dangerous that was," he would not have told the passengers to run.

## II.

The government contends that Hernandez did not challenge the subsection 2L1.1(b)(6) enhancement in district court other than arguing that it was "double counting" when applied with the subsection (b)(7) enhancement, which was applied because serious bodily injury actually occurred (he does not assert the "double counting" argument on appeal). Although Hernandez labelled his written objection with a reference to the subsection (b)(7) enhancement, the substance of the objection addresses the risk issue that only subsection (b)(6) implicates: "Crossing a highway is not per se dangerous (walking through the South Texas brush is not per se reckless endangerment, see United States v. Garza, 541 F.3d 290 (5th Cir. 2008))."[2] That is the exact argument he is raising on appeal. Because we find that Hernandez raised this issue below, we review for clear error—rather than the more stringent plain

---

[2] Section (b)(7) applies if "any person died or sustained bodily injured," without mentioning the risk or dangerousness of the conduct. *See United States v. Ramos-Delgado*, 763 F.3d 398, 401 (5th Cir. 2014) (holding that the subsection (b)(7) enhancement includes no causation requirements).

error—the district court's determination that Hernandez's instruction that the men run away created a substantial risk of death or serious bodily injury. *See United States v. Garcia-Guerrero*, 313 F.3d 892, 895 (5th Cir. 2002).

Section 2L1.1(b)(6) applies "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." The Guidelines commentary states that the enhancement may apply to "a wide variety of conduct," U.S.S.G. § 2L1.1, cmt. 5., but we have never addressed a case with facts similar to this one. Many of our cases concerning this enhancement involve crowded conditions inside a vehicle or stash house.[3] *United States v. Hernandez-Perez*, 366 F. App'x 531, 532 (5th Cir. 2010) (vehicle); *United States v. Magallan-Rodriguez*, 530 F. App'x 318, 319 (5th Cir. 2013) (stash house). The commentary contemplates that both of those situations may give rise to a finding that the offense created a substantial risk of death or serious bodily injury. U.S.S.G. § 2L1.1, cmt. 5 (identify among categories of conduct to which the enhancement apples both "carrying substantially more passengers than the rated capacity of a motor vehicle or vessel" and "harboring persons in a crowded, dangerous, or inhumane condition"). But the same is true for Hernandez's conduct. The commentary directs that "[i]f subsection (b)(6) applies solely on the basis of conduct related to fleeing from a law enforcement officer, do not apply an adjustment from § 3C1.2." *Id.* Section 3C1.2 is a general enhancement, applicable to all cases not just alien smuggling, for causing reckless endangerment during flight. U.S.S.G. § 3C1.2. This instruction against double counting demonstrates that the Sentencing Commission contemplated that fleeing from law enforcement

---

[3] Hernandez argues that application of the enhancement to his case should be governed by the five-factor test from *United States v. Zuniga-Amezquita*, 466 F.3d 886, 889 (5th Cir. 2006). But it makes little sense to apply those factors directed at the danger of conditions inside a vehicle—such as the availability of oxygen and ability to communicate with the driver—to a case involving the risk of conduct occurring outside a vehicle.

is the type of conduct that could create a substantial risk of death or serious bodily injury. *See also United States v. Aguirre*, 354 F. Appx. 916, 920 (5th Cir. 2009) (noting that driving a vehicle off the road to avoid law enforcement "clearly 'involved intentionally or recklessly creating a substantial risk of death or serious bodily injury'").

The question then becomes whether the particular instruction to flee in this case did create that risk. *See United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005) ("Defining the contours of this enhancement is dependent upon carefully applying the words of the guideline in a case-specific analysis."). It is easy to conclude that instructing someone to dart across a United States highway would create a substantial risk.  Hernandez argues that the government produced no evidence of heavy traffic on Highway 281 when the traffic stop occurred.  Because the stop occurred close to midnight, he contends that "it is more likely than not that the traffic was very light."  Maybe so, but the late night timing also means that it was difficult for those fleeing to spot oncoming traffic and for drivers on the road to spot the people crossing, as illustrated by the tractor-trailer hitting Iracheta-Rodas.  Nighttime darkness, therefore, likely made this conduct riskier than if it had occurred in daylight.

But Hernandez did not instruct the passengers to dart across the road. He just told them to "run"."  Two ran across the road; two went the other direction.  That makes the application of the enhancement a closer call.  But even without specific instructions to cross the road, it was foreseeable that some of them would.  It is common for multiple suspects to scatter when fleeing to increase the odds that at least some of them will not be apprehended. Crossing the highway further increased the chances of successful flight, as the pursuing agent may have been reluctant to cross the road (or at least slowed in doing so) because of the danger it poses.  Finally, any flight from law enforcement poses inherent risks. *See Sykes v. United States*, 131 S. Ct. 2267,

No. 14-41184

2273 (2011) *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015) ("The attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase."); *United States v. Watson*, 611 F. App'x 647, 663 (11th Cir. 2015) (applying the 2L1.1(b)(6) enhancement to pilot of an overcrowded vessel that was speeding without its lights on and then attempted to evade the Coast Guard). Flight poses a risk that force will be used in an attempt to apprehend the fleeing individual. Given the inherent risk of fleeing combined with the likelihood that some of the passengers would respond to Hernandez's instruction to "run" by doing what two of them in fact did—run across a highway—the district court did not clearly err in applying the enhancement. *Cf.* Aguirre, 354 Fed. Appx. At 920 (affirming application of enhancement to vehicle that left the road to flee officers and ended up crashing). We thus conclude that the district court did not clearly err in concluding that Hernandez's instruction that his passengers run to avoid law enforcement warranted application of the enhancement.

The judgment of the district court is AFFIRMED.