# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2022

Lyle W. Cayce
Clerk

No. 21-50524

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

FELIPE CASTELO-PALMA,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:20-CR-409-1

Before DENNIS, SOUTHWICK, and WILSON, *Circuit Judges*.

JAMES L. DENNIS, *Circuit Judge*:

On the night of September 2, 2020, a Presidio County, Texas, sheriff's deputy pulled over a 2003 Ford Explorer because its license plate light was out. The deputy identified the driver as Felipe Castelo-Palma. Brayan Gonzales-Rivera, who would be charged as Castelo-Palma's codefendant, was in the passenger seat. After observing a total of nine people in the Explorer, the deputy contacted United States Border Patrol, which identified Castelo-Palma as a United States citizen and seven of the other passengers as illegal aliens. Castelo-Palma was advised of his *Miranda* rights and agreed to speak to the officers without an attorney present. *See Miranda*

*v. Arizona*, 384 U.S. 436 (1966). Castelo-Palma told the agents that he had been approached by the La Linea Drug Trafficking Organization, which offered him between $700 and $800 per person to smuggle illegal aliens from Mexico into the United States. Because Castelo-Palma did not have a driver's license, he contacted Gonzales-Rivera to join the scheme. Together, they picked up three illegal aliens on September 1, and four more on the night of September 2.

Castelo-Palma was charged with one count of transportation of illegal aliens for financial gain. He pleaded guilty without the benefit of a plea agreement. In the presentence report (PSR), the probation officer recommended a total offense level of 17. This calculation included a three-level enhancement under U.S.S.G. § 2L1.1(b)(6) for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person"; in support of the enhancement, the probation officer cited the fact that nine people were in the Explorer, which had a rated capacity of seven passengers. His total offense level, combined with a criminal history category of I, resulted in a guidelines imprisonment range of 24 to 30 months. Castelo-Palma objected to the PSR's § 2L1.1(b)(6) recommendation, arguing that carrying two additional passengers in the Explorer did not create a substantial risk of death or bodily injury, but the district court overruled the objection. Ultimately, Castelo-Palma was sentenced to 24 months of imprisonment and three years of supervised release. He now appeals to this court.

## I.

As a threshold matter, the parties disagree on the applicable standard of review. This court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Barfield*, 941 F.3d 757, 761 (5th Cir. 2019). Castelo-Palma

asserts that his claim presents a purely legal question and should thus be reviewed de novo. The government argues that Castelo-Palma's objection below goes to whether there were sufficient facts to show evidence of the "substantial risk" required to apply the contended sentencing enhancement, not whether it could be properly applied as a matter of law to a set of uncontested facts, and thus that his argument should be reviewed for clear error.

We review the factual findings a district court makes in support of its decision to apply the § 2L1.1(b)(6) enhancement for clear error. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011); *see also United States v. Garza*, 587 F.3d 304, 310 (5th Cir. 2009). But whether undisputed facts constitute reckless endangerment is a legal question reviewed de novo. *See United States v. Torres*, 601 F.3d 303, 305 (5th Cir. 2010) (citing *United States v. Solis-Garcia*, 420 F.3d 511, 514 (5th Cir. 2005)).

Castelo-Palma contends that the government's reliance on *Rodriguez* and *Garza* is misplaced, as there is no factual dispute that the vehicle contained nine passengers despite only being rated for seven. Rather, the dispute is over whether, as a matter of law, the fact that the vehicle contained nine passengers despite only being rated for seven was sufficient to apply this enhancement. We agree. As we held in *Torres*, where a "[petitioner] does not dispute the facts found by the district court, but rather contends the district court erred in its interpretation of the guidelines and its application of factual findings to the reckless endangerment enhancement," our review is de novo. 601 F.3d at 305.

## II.

This court has identified five factors to consider when applying § 2L1.1(b)(6): "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability

to exit the vehicle quickly, and the danger to them if an accident occurs." *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006). The commentary to § 2L1.1(b) provides a non-exhaustive list of conduct the enhancement applies to, including, *inter alia*, "transporting persons in the trunk or engine compartment of a motor vehicle; carrying substantially more passengers than the rated capacity of a motor vehicle or vessel; [and] harboring persons in a crowded, dangerous, or inhumane condition[.]" § 2L1.1(b)(6) cmt. n.3. Applying § 2L1.1(b)(6) "requires a fact-specific inquiry because the reckless endangerment enhancement is intended to apply to a wide variety of conduct." *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (internal quotation marks and citations omitted). That is because "a single, bright-line test is not necessarily appropriate for a guideline that must be applied to a wide variety of factual settings[.]" *Zuniga-Amezquita*, 468 F.3d at 889. However, the Guidelines' "words must be given some restrictive meaning." *Solis-Garcia*, 420 F.3d at 516.

The government does not argue that the passengers of Castelo-Palma's Explorer lacked oxygen, were exposed to extreme temperatures, or were unable to communicate with the driver. However, it contends that the two final factors—the ability of the passengers to exit the vehicle quickly and the danger that they would be seriously injured in an accident— along with the vehicle's overcrowding, justify the enhancement.

## A.

As to the fourth factor, the passengers' ability to quickly exit the vehicle, the government states that the configuration of the Explorer—which had two seats in the front row, three in the second row, and two additional seats in the third row—"demonstrates there was no easy exit from the vehicle for the passengers overloaded in the second or third rows because exit from the third row could only be accomplished with a drop-down seat on the

right-hand side of second row." Castelo-Palma contends that this argument assumes facts about how the passengers were positioned inside the vehicle that were neither in the record nor relied upon by the district court, and that the government "also assumes without evidence that the rear tailgate hatch would not be a viable egress for exit should the need arise."

This court has affirmed applying the § 2L1.1(b)(6) enhancement "in situations in which it would have been difficult for the alien to extricate herself from the vehicle in the event of an emergency because the alien was jammed into a compartment or wedged into a tight space[,]" as well as where the aliens "were completely surrounded by boxes . . . that were too big . . . to easily move." *Mata*, 624 F.3d at 174. For example, in *Garza*, this court upheld the district court's application of § 2L1.1(b)(6) based upon the defendant's illegal transportation of two men who were on the floorboards, partially under the back seat, and wedged between the front and back seats of her pickup truck. 587 F.3d at 310–11. But we have also made clear that, without any aggravating factors, "transporting aliens in the cargo area of a van . . . does not justify the application" of § 2L1.1(b)(6)." *Zuniga-Amezquita*, 468 F.3d at 889.

In *Zuniga-Amezquita*, we upheld the application of this enhancement, because the record reflected that the back of the cargo van was tightly packed with stacked boxes and luggage which prevented the aliens from moving or accessing the van door. *Id.* But in addressing the aliens' ability to exit the vehicle quickly, we carefully distinguished caselaw holding that transporting an alien in the hatchback area of a car does not warrant the application of the enhancement where the hatch could easily open from the inside. *Id.* at 890; *see also Solis-Garcia*, 420 F.3d at 516. In this case, the record does not show that the aliens were crammed into a tight compartment, as in *Garza*, or that they were blocked from exiting the vehicle by boxes or packages, as in *Zuniga-Amezquita*. The record does not reflect, and the district court made no

findings, as to how the aliens were positioned in the SUV, or how the seats in the vehicle were configured.  Conceivably, the back seats could have been down "to create an open cargo area" similar to *Zuniga-Amezquita*.  The record also does not reflect whether the rear tailgate hatch of the Explorer could have been used as a mode of egress.  This dearth of facts beyond the number of people being transported does not support the district court's holding that Castelo-Palma intentionally or recklessly created a substantial risk of death or serious bodily injury to any other person.

**B.**

As to the fifth factor, the danger posed to the vehicle's occupants if there was a crash, the government argues that the fact the aliens were not wearing seatbelts and that Castelo-Palma was apprehended at night justify the application of this enhancement.  But this court has held that the risk to the passengers must "be greater than that of an ordinary passenger not wearing a seatbelt in a moving vehicle[,]" *Zuniga-Amezquita*, 468 F.3d at 890, and that this enhancement "does not extend so far as to increase punishment for offenders simply for transporting illegal aliens without requiring them to wear seatbelts." *Rodriguez*, 630 F.3d at 381 (quoting *Solis-Garcia*, 420 F.3d at 516).  Here, the record does not demonstrate that the risk to the aliens was any greater than the risk to an ordinary passenger not wearing a seatbelt.  The government claims that an unpublished opinion, *United States v. Hernandez*, 630 F. App'x 254, 257 (5th Cir. 2015), demonstrates "that the attempt to transport aliens at night can, in and of itself, create a substantial risk of serious injury to them."  But, in addition to being unpublished, *Hernandez* is easily distinguishable:  in that case, the defendant had instructed the aliens whom he was transporting to flee from law enforcement across a highway. *Id.* We thus reasoned that the fact that it was nighttime was relevant to our consideration of whether the defendant's instruction constituted reckless endangerment because crossing an active

highway in the dark is more dangerous than doing so in the light. *Id.* at 255, 257. *Hernandez* did not hold that an attempt to transport aliens at night per se creates a substantial risk of serious injury to another person. This factor thus also does not support the district court's holding that Castelo-Palma intentionally or recklessly created a substantial risk of death or serious bodily injury to any other person.

## III.

Notably, in listing the types of activities the § 2L1.1(b)(6) sentencing enhancement applies to, the commentary to § 2L1.1(b) includes "carrying *substantially more* passengers than the rated capacity of a motor vehicle or vessel[.]" § 2L1.1(b)(6) cmt. n.3. (emphasis added). In *Rodriguez*, six people—five aliens and the driver—were riding in a Ford Explorer with a maximum capacity of five, with three of the aliens in the vehicle's cargo area. 630 F.3d at 379, 382 n.24. In that case, this court found that the application of the enhancement was not justified. We have affirmed reliance on overcrowding to justify the application of this enhancement only where the vehicle was carrying many more people beyond the vehicle's capacity than at issue in this case. *See, e.g.*, *United States v. Sanchez-Gaucin*, 595 F. App'x 344, 345 (5th Cir. 2014) (affirming where a vehicle rated for 15 was carrying 34 occupants); *United States v. Hernandez-Perez*, 366 F. App'x 531, 532 (5th Cir. 2010) (affirming where a vehicle rated for seven was carrying 15 passengers). Without other aggravating factors, nonsubstantial overcrowding alone is not enough to justify application of § 2L1.1(b)(6)).

## IV.

For the foregoing reasons, we VACATE Castelo-Palma's sentence and REMAND for resentencing consistent with this opinion.