# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2022

Lyle W. Cayce
Clerk

No. 21-40557

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ESTEBAN RAMIREZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:21-CR-444

Before CLEMENT, GRAVES, and COSTA, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:

Esteban Ramirez pleaded guilty to transporting an alien within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i). At sentencing, the district court enhanced his total offense level for reckless endangerment pursuant to § 2L1.1(b)(6) and for reckless endangerment while fleeing pursuant to § 3C1.2. Ramirez did not object and was sentenced at the bottom of the guideline range to 37 months of imprisonment. On appeal, Ramirez argues that the district court plainly erred by enhancing his total offense level pursuant to § 2L1.1(b)(6). We agree and accordingly vacate his sentence and remand for resentencing.

No. 21-40557

I.

On January 25, 2021, United States Customs and Border Protection (CBP) agents spotted a Dodge Avenger decelerating on a highway in San Manuel, Texas. The agents followed the car, noting that it was swerving between lanes, had an abnormal bounce, and was driving in tandem with a Chevrolet Silverado. The agents activated their emergency lights and attempted to stop the vehicle to conduct an immigration inspection. The vehicle initially stopped, allowing the agents to approach.

Upon arriving at the car, the agents found Ramirez in the driver's seat, one passenger accompanying him in the front, and three unrestrained passengers in the back with an additional passenger laying across their laps. The agents asked Ramirez to turn off his car and surrender his keys. He fled instead. After turning around, Ramirez accelerated to somewhere between 95 and 105 miles per hour. The agents followed Ramirez for 14 miles until he eventually crashed into a GMC Sierra after running a red light.

Immediately following the collision, the four passengers in the back fled on foot. None of them were caught. Ramirez also attempted to flee but was quickly apprehended. Meanwhile, the front passenger, Ruben Hernandez (an undocumented alien), remained in the vehicle until he was transported to the hospital where he was evaluated for a concussion. Ramirez and the driver of the GMC Sierra, J.C., were also transported to the hospital for evaluation and treatment. Ramirez and Hernandez avoided serious injury, but J.C. suffered three herniated discs.

On February 23, 2021, a federal grand jury indicted Ramirez, charging him with: (1) conspiracy to transport aliens within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), and (a)(1)(B)(i); and (2) transporting an alien within the United States in violation of §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i). Ramirez entered a guilty plea to count

two of the indictment after the government agreed to dismiss count one and recommend a two-level downward departure for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The district court accepted Ramirez' plea and ordered the United States Probation Office (USPO) to prepare a presentence report (PSR).

The PSR discussed the previously addressed facts and included post-arrest testimony from Ramirez, Hernandez, a CBP agent, and J.C. Ramirez testified that once he and his passengers were being pursued, Hernandez asked him to "open the door so he could jump out." Ramirez refused, given that they were driving at approximately 100 miles per hour. Shortly thereafter, he crashed into J.C. He claimed that the collision occurred because the agents following him were distracting him, which took his attention away from the red light. He further testified that the airbags deployed, and that although he believed Hernandez was unconscious following the collision, he later saw him standing, though he looked to be in shock.

Hernandez also gave a statement. According to him, he was picked up from a stash house and driven toward Houston. He recalled seeing emergency lights, not fearing for his life or thinking that Ramirez was driving too fast, and hearing Ramirez tell him and the others to remain calm. He could not remember anything else due to his head injury.

Finally, the PSR included statements from a CBP agent and J.C. According to the agent, "the roadways were dry and dark" on the relevant evening. Traffic was also light. According to J.C., his three herniated discs required him to attend continuing physical rehabilitation.

At sentencing, the district court adopted the PSR, amending it only to grant a third-level reduction for acceptance of responsibility. According to the PSR, Ramirez had a total offense level of 22, which was amended to 21

No. 21-40557

following the third-level reduction for acceptance of responsibility. His total offense level included a base offense level of 12 with the following departures: (1) an enhancement to level 18 pursuant to § 2L1.1(b)(6) (reckless endangerment); (2) a four-level enhancement pursuant to § 2L1.1(b)(7)(B) (serious bodily injury); (3) a two-level enhancement pursuant to § 3C1.2 (reckless endangerment while fleeing); and (4) the three-level reduction pursuant to § 3E1.1(a) (acceptance of responsibility). The PSR calculated his criminal history score at zero and his criminal history category at 1. Based on these calculations, his guideline range was 37 to 46 months of imprisonment.

Ramirez objected to the four-level enhancement for serious bodily injury under § 2L1.1(b)(7)(B). The district court overruled his objection because of J.C.'s injuries. Likewise, he sought a variance pursuant to 18 U.S.C. § 3553(a), which the district court denied. Instead, the district court stated: "But I will sentence you at the low end to a term of 37 months in custody." After the district court entered its judgment, Ramirez timely appealed, arguing that the district court erroneously enhanced his sentence under § 2L1.1(b)(6).

II.

Ramirez did not object to the district court's § 2L1.1(b)(6) enhancement; thus, we only review for plain error. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). To demonstrate plain error, Ramirez must show: (1) an error; (2) that is clear or obvious, rather than subject to reasonable dispute; and (3) that affects his substantial rights. *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). If he can establish the first three prongs, then we have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously

affect[s] the fairness, integrity or public reputation of judicial proceedings." *Escalante-Reyes*, 689 F.3d at 419 (quoting *Puckett*, 556 U.S. at 135).

### III.

We hold that the district court plainly erred by enhancing Ramirez' total offense level pursuant to § 2L1.1(b)(6). To begin, we must initially consider the interplay between § 2L1.1(b)(6) and § 3C1.2 because the district court enhanced Ramirez' sentence under both provisions. Pursuant to § 2L1.1(b)(6), a defendant convicted of transporting an unlawful alien receives a sentencing enhancement if "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." According to the commentary for this provision, courts are not to apply a § 3C1.2 (reckless endangerment during flight) enhancement in addition to a § 2L1.1(b)(6) enhancement if the latter is invoked "solely on the basis of conduct related to fleeing from a law enforcement officer." § 2L1.1 cmt. n.3.

Here, in support of the § 2L1.1(b)(6) enhancement, the PSR cited the CBP agents' findings that Ramirez was transporting five undocumented aliens, four of whom were unrestrained, plus himself in a vehicle with a seating capacity of five. In support of the § 3C1.2 enhancement, the PSR cited the 14-mile chase where Ramirez reached speeds of up to 105 miles per hour at night. Because the district court enhanced Ramirez' sentence under both provisions, the § 2L1.1(b)(6) enhancement *cannot* be based on his conduct while fleeing from the CBP agents. *See* § 2L1.1 cmt. n.3. Thus, any support for the § 2L1.1(b)(6) enhancement must come from his pre-flight activity.

Ramirez' pre-flight activity does not support a § 2L1.1(b)(6) enhancement, even under plain error review. When determining whether a § 2L1.1(b)(6) enhancement is appropriate, we consider five non-exhaustive

factors: "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs." *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006).  This is a fact-specific inquiry, *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (per curiam), that must uncover "a *substantial* risk of *death* or *serious* bodily injury." *Zuniga-Amezquita*, 468 F.3d at 889 (emphasis added).

There is no indication from the undisputed facts that any of the undocumented immigrants faced a lack of oxygen, exposure to temperature extremes, an inability to communicate with Ramirez, or an inability to exit the vehicle quickly.  As for the fifth factor, we have been clear: the danger associated with not wearing a seatbelt is insufficient to trigger § 2L1.1(b)(6). *See Zuniga-Amezquita*, 468 F.3d at 890; *see also United States v. Castelo-Palma*, 30 F.4th 284, 288–89 (5th Cir. 2022) ("[T]he record does not demonstrate that the risk to the aliens was any greater than the risk to an ordinary passenger not wearing a seatbelt.").  Aside from the lack of seatbelts, there was some overcrowding in the vehicle.  But six passengers in a vehicle rated for five is certainly not "severe." *See, e.g.*, *United States v. Solis-Garcia*, 420 F.3d 511, 515 (5th Cir. 2005) (holding that the defendant's transportation of "eight individuals in a minivan designed to seat seven"— even worse, a minivan with only four seats—did not constitute "severe" overcrowding).

Lacking support from the *Zuniga-Amezquita* factors, the government argues that the enhancement is still proper because of other "aggravating factors."  Specifically, the government notes that one unrestrained passenger was laying horizontally across the laps of the other back-seat passengers; Ramirez was traveling over 60 miles-per-hour pre-flight at night; and Ramirez was driving "recklessly" and swerving between lanes in tandem with another vehicle all while lacking a driver's license.  The government

concludes that the totality of the circumstances supports the district court's conclusion that Ramirez created a substantial risk of serious bodily injury or death for his passengers. We are unpersuaded.

First, *Solis-Garcia* already held that a § 2L1.1(b)(6) enhancement was improper even when the undocumented aliens there were in an unsecured, prone position in the cargo area of a minivan while traveling at highway speeds. 420 F.3d at 513. Further, *Castelo-Palma* reiterated that transporting aliens at night does not create a per se substantial risk of serious injury or death to another person. 30 F.4th at 288. Thus, that one undocumented immigrant was prone, and Ramirez was driving at highway speeds at night, is insufficient for a § 2L1.1(b)(6) enhancement. The question, then, is whether the additional facts—the swerving, driving in tandem, and lack of a driver's license—change the analysis. We think not.

To be sure, swerving between lanes while driving in tandem with another vehicle can be dangerous, particularly when this occurs at night with unrestrained passengers on a highway. But this narrative omits critical facts. Yes, it was nighttime, but the roads were dry, traffic was light, and Ramirez was driving *under* the posted speed limit. Further, unlike cases where we have affirmed an enhancement based on reckless driving, Ramirez was not speeding, off-roading, fleeing—at the relevant time—or the like. *See, e.g.,* *United States v. Rojas-Mendoza*, 456 F. App'x 477, 479–80 (5th Cir. 2012) (per curiam) (unpublished); *United States v. Trujillo-Reyes*, 318 F. App'x 286, 288 (5th Cir. 2009) (per curiam) (unpublished); *United States v. Aguirre*, 354 F. App'x 916, 920 (5th Cir. 2009) (per curiam) (unpublished). Ramirez' conduct was certainly unsafe, but that does not mean that he created a substantial risk of death or serious bodily injury. Finding otherwise was plain error.

No. 21-40557

Ramirez has also shown "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Nino-Carreon*, 910 F.3d 194, 197 (5th Cir. 2018) (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)). If the district court had not enhanced Ramirez' sentence under § 2L1.1(b)(6) and § 3C1.2, there would have been two other possible sentencing outcomes: (1) the district court could have applied § 2L1.1(b)(6) to all his conduct, foregoing the § 3C1.2 enhancement altogether; or (2) the district court could have only applied the § 3C1.2 enhancement. Under option one, Ramirez' guideline range would have been 30 to 37 months. Under option two, his guideline range would have been 18 to 24 months. Ramirez' actual sentence of 37 months of imprisonment, which was explicitly adopted as a sentence at the bottom of the guideline range, is at the top of the guideline range for an option one sentence and outside the guideline range for an option two sentence. Such discrepancy plainly shows that the district court's error affected Ramirez' substantial rights and that relief should be granted. *See Urbina-Fuentes*, 900 F.3d at 699 (5th Cir. 2018) ("[I]t is clear from *Rosales-Mireles* that the Court expects relief to 'ordinar[il]y' be available to defendants in sentencing cases when the first three prongs were met." (quoting *Rosales-Mireles*, 138 S. Ct. at 1911)).

\* \* \*

The district court's sentence is VACATED, and the case is REMANDED for resentencing.

8