# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 1, 2022

Lyle W. Cayce
Clerk

No. 22-50263

United States of America,

*Plaintiff—Appellee*,

*versus*

Ricardo Hernandez, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
For the Western District of Texas
USDC No. 4:20-CR-505

Before King, Duncan, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Ricardo Hernandez pleaded guilty to transporting illegal aliens for financial gain. At his original sentencing, the district court applied an enhancement for intentionally or recklessly creating a risk of death or serious bodily harm to another person and then sentenced Hernandez to twenty-seven months of imprisonment. Hernandez appealed, and we vacated the sentence because we held that the record before the district court at sentencing did not support the enhancement. Without further instruction, the matter was remanded for resentencing.

No. 22-50263

On remand, the Government introduced additional evidence to support the enhancement. Relying on the new evidence, the district court again applied the enhancement and sentenced Hernandez to the same sentence that he had received before. Hernandez appeals, arguing both that the district court exceeded this court's mandate by agreeing to hear new evidence and that the new evidence introduced by the Government is still insufficient to warrant imposition of the enhancement.

I

On the evening of November 5, 2020, Police apprehended Ricardo Hernandez while he was transporting illegal aliens in his Cadillac Escalade. Hernandez pleaded guilty to transporting aliens for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(i). The Presentence Investigation Report (PSR) prepared by the probation office recommended an enhancement pursuant to United States Sentencing Guideline (U.S.S.G.) § 2L1.1(b)(6), which allows for an enhancement "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." This enhancement raised Hernandez's offense level by two levels. The PSR contained scant additional details to support the offense. It stated only that there were "several occupants in the back seat and rear cargo area" of Hernandez's Escalade and that the occupants in the rear cargo area were "laying on top of one another."

At sentencing, Hernandez's attorney did not object to the PSR, including the § 2L1.1(b)(6) enhancement. The district court therefore adopted the PSR, including the enhancement, and sentenced Hernandez to twenty-seven months of imprisonment. Hernandez appealed, arguing that the application of the § 2L1.1(b)(6) enhancement was plain error because the record did not support the imposition of the enhancement. A panel of this court agreed, holding that "[t]he operative facts—Hernandez's carrying

three passengers over his sport utility vehicle's rated capacity, some of whom were stacked unrestrained in the nonpassenger area of the vehicle—do not, without more, suffice" to impose the § 2L1.1(b)(6) enhancement. *United States v. Hernandez*, No. 21-50515, 2022 WL 576406, at *1 (5th Cir. Feb. 25, 2022). At the conclusion of the order, the panel stated that "we VACATE and REMAND the case to the district court for resentencing." *Id.*

At resentencing, the district court agreed to hear additional evidence from the Government regarding the § 2L1.1(b)(6) enhancement. The Government called Andres Gonzalez, the officer who apprehended Hernandez. Gonzalez testified that around 8:45 p.m. on November 5, 2020, he pulled over Hernandez's Escalade. He had noticed that "the vehicle was swerving within its lane and at several times had crossed over the center lane divider." Hernandez and a woman were in the driver's seat and passenger seat, respectively. Another three aliens sat in the three seats behind them. There were six aliens in the cargo area, who were unsecured and laying "with their backs and heads up against the side panels of the vehicle." Gonzalez testified that they were "stacked in there pretty tight." He further noted that while he could open the glass part of the rear door, the rear door itself could not be unlocked. Indeed, Gonzalez made numerous efforts to open the rear door, including by using the keys and asking Hernandez to open the hatch from the driver's seat. Video evidence from Gonzalez's body cam verifies his testimony.

Based on this evidence, the district court again applied the § 2L1.1(b)(6) enhancement. The district court emphasized that it did not "see an ability to exit [the vehicle] quickly, period." The court also noted that the passengers were "strewn about" in the cargo area and were not secured with seatbelts. Finally, the district court was concerned that the passengers were in "the care, custody, and control of that driver." Considering this evidence together, the district court applied the

enhancement, identified the same Guidelines range as it had previously, and sentenced Hernandez to the same sentence it had before: twenty-seven months.

Hernandez appeals. He first argues that it was improper for the district court to hear additional evidence related to the § 2L1.1(b)(6) enhancement on remand, as that exceeded this court's mandate and gave the Government a "second bite at the apple." Second, he argues that the evidence presented by the Government still does not demonstrate that application of the enhancement was proper. We address each argument in turn.

II

We first address whether the district court exceeded our mandate by hearing additional evidence on remand regarding the sentencing enhancement. This inquiry involves both the law-of-the-case doctrine and the mandate rule. "Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). "The mandate rule, which is a corollary or specific application of the law of the case doctrine, prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) (emphasis omitted). "We review de novo a district court's interpretation of our remand order, including whether the law-of-the-case doctrine or mandate rule forecloses any of the district court's actions on remand." *Id.* at 204 (emphases omitted).

Our decision in *United States v. Carales-Villalta*, 617 F.3d 342 (5th Cir. 2010), is directly on point here. In that case, a defendant had pleaded guilty

to illegal reentry following removal, and the district court enhanced his sentence under § 2L1.2(b)(1)(C). *See United States v. Carales-Villalta*, 311 F. App'x 727, 727 (5th Cir. 2009). The defendant appealed, and this court acknowledged that the enhancement was erroneous. *Id.* As here, we vacated the defendant's sentence and remanded for resentencing. *Id.* at 728.

The district court then considered additional evidence on remand, and based on this newly presented evidence, again applied the § 2L1.2(b)(1)(C) enhancement. *See Carales-Villalta*, 617 F.3d at 344. The defendant appealed, making an identical argument to the one Hernandez presses here—namely, that the district court exceeded this court's mandate and could not hear additional evidence related to the § 2L1.2(b)(1)(C) enhancement.

We disagreed. We held that "[i]n the absence of a specific mandate and in the interest of truth and fair sentencing, the district court may consider any corrections and additions relevant to the issues addressed by this Court on appeal." *Id.* at 345. "Therefore, when the case is remanded for resentencing without specific instructions, the district court *should* consider any new evidence from either party relevant to the issues raised on appeal." *Id.* (emphasis added). We contrasted this with issues that were not raised on appeal, which could not be considered (or reconsidered) on remand "due to the passage of time and logistical considerations." *Id.* We also noted that we could "mandate a particular result or limit consideration to only particular evidence on remand," *id.*, a path this court did not take in response to Hernandez's first appeal. Because *Carales-Villalta* is directly on point, it controls and makes clear that the district court did not err by considering additional evidence in support of the § 2L1.1(b)(6) enhancement on remand.

Hernandez attempts to distinguish *Carales-Villalta* by arguing that there is a distinction between introducing additional evidence to "clarify" a

record and introducing additional evidence to "establish" a fact not in evidence. Hernandez suggests that *Carales-Villalta* dealt with the former circumstance, and this case dealt with the latter. But Hernandez's argument points more to a semantic difference than a legal distinction, particularly because, as here, in *Carales-Villalta* the Government had to introduce additional evidence or the sentencing enhancement could not be properly applied. Moreover, nothing in *Carales-Villalta* limits its holding to cases where the Government is "clarifying" the record, rather than "establishing" a record.

Hernandez also points to cases post-dating *Carales-Villalta* to argue that the district court erred. It is true that in *United States v. Chemical & Metal Industries, Inc.*, 677 F.3d 750, 753 (5th Cir. 2012), we stated—in apparent reliance on only a Second Circuit case and with no discussion of our binding precedent in *Carales-Villalta*—that "[t]he government generally may not present new evidence on remand when reversal is required due to the failure to present evidence originally." *Id.* at 753 (citing *United States v. Archer*, 671 F.3d 149, 168–69 (2d Cir. 2011)); *see also United States v. Villalobos*, 879 F.3d 169, 172 (5th Cir. 2018) (reiterating this holding in dicta). To the extent that the holding in *Chemical & Metal Industries is* in tension with *Carales-Villalta*, the holding of *Carales-Villalta* controls. *See United States v. Broussard*, 669 F.3d 537, 554 (5th Cir. 2012) (explaining that "where 'two previous holdings or lines of precedent conflict, the earlier opinion controls and is the binding precedent in this circuit.'" (quoting *United States v. Wheeler*, 322 F.3d 823, 828 n.1 (5th Cir. 2003))).[1]

---

[1] Hernandez also relies heavily on the Second Circuit case *United States v. Archer*, 671 F.3d 149, 168–69 (2d Cir. 2011). He argues that we should follow the rule laid out in *Archer* because it is the "majority rule." But we are bound to follow our precedents, not the precedents of our sister circuits. *See, e.g.*, *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). Moreover, *Archer* is distinguishable. Like *Chemical & Metal Industries*, in

No. 22-50263

But even were we to apply the test laid out in *Chemical & Metal Industries*, Hernandez's argument would still fall short. First, *Chemical & Metal Industries* is distinguishable. There, the court did not remand the case at all, but rather it modified the fine and restriction order and otherwise affirmed. *Chemical & Metal Industries, Inc.*, 677 F.3d at 753. In other words, the court explicitly chose not to give the Government a second chance to introduce evidence on remand and instead took advantage of a path *Carales-Villalta* explicitly offers us: to "mandate a particular result." 617 F.3d at 345. Second, that case purported to hold that a party "*generally* may not present new evidence on remand." *Chem. & Metal Indus.*, 677 F.3d at 753 (emphasis added). But there are "special circumstances" that justify an exception to the rule, including "where the government's burden was unclear." *Villalobos*, 879 F.3d at 172. Hernandez argues that the Government's burden was obviously clear, as this court reversed his earlier sentence on plain error review. But this ignores the fact that Hernandez previously seemed to take the *same* view[2] of the Government's burden as the Government did, as he failed to object before the district court during his first sentencing hearing. And unlike in *Chemical & Metal Industries*, the Government did not concede error on appeal. Under these circumstances, the contours of the Government's burden were at least sufficiently fuzzy that a "special circumstance" was present, and the Government could therefore present additional evidence on remand.

---

*Archer* an appellate court considered whether it was appropriate for the Government to produce additional evidence on remand *before* it remanded the case, and specifically instructed the district court to consider certain factors in determining whether to do so. *Archer*, 671 F.3d at 168–69. That differs from this case, where our court gave no specific instructions on remand in deciding Hernandez's first appeal. *See Hernandez*, 2022 WL 576406, at *1.

[2] The probation officer and the district court shared this view as well.

7

In sum, we hold that *Carales-Villalta* binds this court and is dispositive here. Moreover, even under Hernandez's preferred approach, the district court did not err in hearing additional evidence related to the § 2L1.1(b)(6) enhancement on remand.

## III

We next consider whether the district court properly applied the enhancement. Because Hernandez preserved his objection to the application of the sentencing enhancement, we review "a district court's interpretation of the Sentencing Guidelines de novo and its factual determinations for clear error." *United States v. Garza*, 587 F.3d 304, 308 (5th Cir. 2009).

The Sentencing Guideline at issue is U.S.S.G. § 2L1.1(b)(6). That Guideline allows for an enhancement "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." The commentary to the Guidelines tells us that the "[r]eckless conduct to which the adjustment . . . applies includes a wide variety of conduct," including "transporting persons in the trunk or engine compartment of a motor vehicle" and "carrying substantially more passengers than the rated capacity of a motor vehicle." U.S.S.G. § 2L1.1 cmt. 3.

Our caselaw makes clear that the act of transporting aliens lying in the cargo area of a minivan does not "create[] a substantial risk of death or seriously bodily injury to another person" unless aggravating factors are present. *See United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005). This is because "[t]he only dangers we consider to be associated with riding in the cargo area of the minivan are generally the same dangers that arise from an individual not wearing a seatbelt in a moving vehicle." *Id. See also United States v. Rodriguez*, 630 F.3d 377, 381 (5th Cir. 2011); *United States v. Castelo-Palma*, 30 F.4th 284, 288–89 (5th Cir. 2022). Given that the only evidence

in support of the enhancement before this court during Hernandez's first appeal was the PSR's statements that there were "several occupants in the back seat and rear cargo area" of Hernandez's Escalade who were "laying on top of one another," the prior panel was correct that our caselaw required vacating Hernandez's earlier sentence.

Our precedents have also described which "aggravating factors" may warrant application of the enhancement. These include "(1) the availability of oxygen; (2) exposure to temperature extremes; (3) the alien's ability to communicate with the driver of the vehicle; (4) the alien's ability to exit the vehicle quickly; and (5) the danger to the alien if an accident occurs." *Garza*, 587 F.3d at 310 (citing *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006). This list is non-exhaustive. *Id.* Our cases often emphasize the final two factors, particularly because they are often related. *See id.* at 311; *Zuniga-Amezquita*, 468 F.3d at 889–90.

Here, the district court expressly found that aliens in the cargo area could not exit the vehicle quickly. This finding was not clearly erroneous. Given the number of individuals "stacked in [the cargo area] pretty tight," and the inability of Gonzalez to open the back door even with the keys, this finding was reasonable. Hernandez's counterarguments, including that the passengers could have managed to climb out of the narrow back window of the Escalade or that the there might have been a different (though unproved) way to open the back door do not demonstrate clear error. "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *United States v. Hughes*, No. 21-50458, 2022 WL 1223806, at *2 (5th Cir. Apr. 26, 2022) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

No. 22-50263

We have previously held that "[t]ransporting aliens in a manner that significantly hinders their ability to exit the vehicle quickly creates a substantial risk of death or serious bodily injury." *Zuniga-Amezquita*, 468 F.3d at 889. In other words, on resentencing the Government proved up an aggravating factor that was not considered by this court during Hernandez's first appeal. The presence of that aggravating factor is dispositive here, as its presence is sufficient for application of the § 2L1.1(b)(6) enhancement.[3] *Id.*

## IV

For the foregoing reasons, we AFFIRM.

---

[3] Although the district court's findings that the aliens could not egress the vehicle easily is sufficient to affirm here, we note that there is other evidence in the record which further supports application of the enhancement. Specifically, Gonzalez testified that Hernandez was driving dangerously, including "swerving within its lane and at several times had crossed over the center lane divider." Although in *United States v. Ramirez*, we found a defendant's "unsafe" driving insufficient to impose the § 2L1.1(b)(6) enhancement, that case should not be read to suggest that a driver's unsafe driving can never be a consideration that supports application of the enhancement, particularly because in that case there was also evidence the driver was making an effort to drive safely by going fifteen miles under the speed limit. 37 F.4th 233, 237 (5th Cir. 2022).